FIRST NATIONAL BANK OF ALBIA *et al.*, Appellants, v. CITY COUNCIL OF ALBIA, AS A BOARD OF EQUALIZATION, Appellee.

1. **Taxation**: NATIONAL BANKS: REAL ESTATE DEDUCTED FROM VALUE OF CAPITAL STOCK. Where a portion of the capital stock of a national bank is invested in real estate, and such real estate is assessed for taxation, the stock of said bank can be taxed to the extent only of such proportion of its market value as may remain after deducting therefrom the actual value of said real estate.

2. ———: ———: SHARES OF STOCK AS CREDITS. Shares of stock in a national bank are credits within the meaning of section 814 of the Code, entitling a tax payer to deduct, from the gross amount of his credits listed for taxation, all debts owing by him in good faith.

*Appeal from Monroe District Court.*—HON. E. L. BURTON, Judge.

SATURDAY, MAY 28, 1892.

APPEAL from the action of the board of equalization of the city of Albia in relation to an assessment upon the capital stock of a national bank. The facts are stated in the opinion of the court.—*Reversed.*

*J. C. Mabry*, for appellants.

*T. B. Perry*, for appellee.

KINNE, J.—The undisputed facts, as disclosed by the record in this case, are that the First National Bank of Albia is a corporation, organized and transacting the business of banking under and by virtue of the laws of the United States. The other parties plaintiff are officers and stockholders in said corporation. That the capital stock of said plaintiff bank is fifty thousand dollars. That said bank has invested

thirteen thousand, five hundred dollars in real estate. That property in the city of Albia for the year 1889 was assessed at sixty per cent. of its cash value. That the city assessor assessed the real estate of said bank in the same manner as other real estate. That he deducted six thousand, four hundred and seventeen dollars from the capital stock of the plaintiff bank, and assessed the remainder to the individual stock-holders according to the number of their shares. That on seven thousand and eighty-three dollars, the difference between the value of the real estate and the amount deducted from the capital stock on account of real estate, the said bank claims to have been illegally assessed. The plaintiff T. D. Lockman, at the time the assessor assessed him, was the owner of fifty shares of stock in said bank, and was justly indebted in the sum of four thousand, five hundred dollars, and had no moneys and credits, except his shares of stock, from which he could deduct said indebtedness. The assessor deducted said indebtedness from the value of the shares of said Lockman, not already assessed as real estate, and it left nothing upon which Lockman was assessable as bank stock. The plaintiff J. H. Drake was the owner of one hundred and ninety-four shares of stock in said bank, and at the time of his assessment was justly and in good faith indebted in the sum of three thousand dollars, and had no other moneys and credits, except his shares of stock, from which to deduct said indebtedness. The assessor in his case deducted the three thousand dollars from the valuation of his shares of stock, and assessed the remainder not already assessed as real estate. That the plaintiff bank appeared before the board of equal-ization of the city of Albia at the time required by law, and made complaint that it was, as a bank, doubly assessed on seven thousand and eighty-three dollars, being assessed on it as real estate and also as part of

capital stock, and asked that said assessment be corrected so as to assess as capital stock or shares only the amount not invested in real estate. The board of equalization deducted one thousand and eighty-three dollars more from the capital stock assessment on account of the real estate, and refused further relief. That said board raised the assessment of the plaintiffs Lockman and Drake by refusing to allow them any deduction on account of their individual indebtedness. From the action of the board of equalization all the plaintiffs appealed to the district court, which held the assessment valid.

It will be observed that there are two questions presented for our determination: *First.* Is the plaintiff bank entitled to have deducted from its assessable capital stock the value of its real estate? *Second.* Are the plaintiffs Lockman and Drake entitled to have their individual indebtedness deducted from the shares of stock assessed to them respectively? Involved in the determination of these questions are others. Thus, if the bank is entitled to a deduction from its stock on account of its real estate, will it be the assessed value or actual value of the real estate which shall be deducted, and will the deduction be made from the par value of the stock or from its actual cash value? This case is triable *de novo. Davis v. City of Clinton,* 55 Iowa, 549. The appellees introduced no evidence.

I. It is insisted that the court below erred in not deducting the amount of the bank stock which was invested in real estate, viz., thirteen thousand, five hundred dollars, from the total amount of its capital stock. Under our statute (Code sections 818, 819), all shares in national banks are listed in the names of the stockholders, but the tax is payable by the bank. The statute also provides that such shares shall not be assessed at a greater rate than other

1. TAXATION: national banks: real estate deducted from value of capital stock.

"moneyed capital in the hands of individuals." Code, section 818. Section 5219 of the federal statutes authorizes the states to tax these banks, and contains the restriction "that the taxation shall not be at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of such state." The same statute authorizes the taxation of the real estate held by such banks "to the same extent, according to its value, as other real estate is taxed." It is said in *National State Bank v. Young*, 25 Iowa, 311, 314: "The shares of the stockholders represent the capital of the institution. To tax the shares, and also the property of the bank, would be double taxation." *People v. Weaver*, 100 U. S. 539. 1 Desty on Taxation, pp. 199, 200, 379, 383. See, also *Tallman v. Treasurer of Butler Co.*, 12 Iowa, 531, where the court said: "The shares of stockholders are theoretically, if not practically, measured in value by the property of the corporation. * * * However held [the lands], whether in fee or otherwise, by the company, they are a part of the capital,—affect the value of the stock which is taxable through the shares. To tax the land, and the stock also, which represents it, and which is enhanced by the value of the land, it seems to us would be double taxation." In the case of *In re Appeal of Des Moines Water Co.*, 48 Iowa, 324, 333, it is held that the stock of a corporation must be taxed as the property of the corporation owners, and the question as to whether both the shares and the corporate property shall be taxed at the same time was not determined. In *Cook v. City of Burlington*, 59 Iowa 251, the case last cited is approved, and a majority of the court held that the property of a corporation may be taxed, and that at the same time the stock can be taxed to the individual owners; and, after citing *Tallman v. Treasurer of Butler Co.*, 12 Iowa, 534; *United States Express Co. v. Ellyson*, 28 Iowa, 370, 378; *McGregor's Ex'rs v.*

*Vanpel*, 24 Iowa, 436,—the court further says, that it has never held "that what is denominated 'duplicate taxation' is in excess of the legislative power. The most that can be said of these utterances of the court is that it should be held in disfavor by courts and legislatures." In *Henkle v. Town* of *Keota*, 68 Iowa, 338, the doctrine announced in *Des Moines Water Co's. Appeal* and *Cook v. City of Burlington* is approved, and it is expressly held that shares of stock in a bank incorporated under the state law were taxable to the shareholders.

It is clear that, as the power to tax the property of national banks and their stock is derived from the legislation of the general government, the state is, in its exercise, bound by the limitations and restrictions placed thereon by congress, and our own statute, which we have referred to, is in accord with the provisions of the federal law. In this case the bank has thirteen thousand, five hundred dollars of its capital stock invested in its bank building and other real estate. This is taxable as is other real estate. It was thus taxed. Manifestly, if the fifty thousand dollars capital stock is assessed and taxed without regard to the portion thereof thus invested in real estate, it will amount to double taxation of the stock to the extent of the thirteen thousand, five hundred dollars. In other words if the appellee's theory is correct, it is lawful to tax the entire capital stock of fifty thousand dollars, and then, in addition, tax real estate which is acquired by an investment or use of thirteen thousand, five hundred dollars of this same stock. We think such a result would not only be most inequitable and unjust, but would be clearly in violation of the provision of both federal and state statutes, which limit the taxation of these corporations as heretofore stated. The statute of the United States in relation to the taxation of these corporations is explicit,—it condemns just

such an exercise of the power of taxation as was attempted in the case at bar. It is binding on the state, and the state statute is in harmony with it.

Thus far we have assumed that the record shows that this real estate was purchased out of the bank stock. It appears that the bank's real estate consisted of the lot and building it now occupies; also other real estate formerly used by it in its business. There is nothing to show the separate value of these two pieces of real estate. It is claimed that the bank acquired the lot and building it now occupies by purchase upon an execution sale, had on foreclosure of a mortgage which it held by assignment to secure a debt; but, if this be so, it does not follow that the property was not paid for in fact out of the capital stock of the bank, as the plaintiff's officers testify; and, while it is true that no formal pleadings are required to be filed in this class of classes, yet, in the answer filed to the plaintiff's petition, the allegation of the petition that the real estate was acquired by the use of the capital stock of the bank is not denied. From the record before us we think it fairly appears that the real estate was paid for out of the capital stock.

The actual value of the stock, diminished by the proportionate value of the real estate owned by the bank, furnishes the proper sum in this case upon which to assess the tax. *People v. Weaver,* 100 U. S. 539; *Supervisors v. Stanley,* 105 U. S. 305; 1 Desty on Taxation 383. See Code, section 813. This actual cash value of the stock would be its market value whether above, below or at par. From the testimony in this case, we must presume that the value of the real estate was thirteen thousand, five hundred dollars, and the actual value of the stock its par value. While there is some evidence relating to the value of the land and of the stock, there is nothing which justifies us in fixing any value other than that above stated.

II. Were the plaintiffs, Lockman and Drake, entitled to deduct their indebtedness from their shares of bank stock? The evidence shows, without conflict, that they had no moneys and credits, other than their bank stock, from which to deduct their indebtedness. We think the evidence establishes the indebtedness of these plaintiffs as claimed. Section 814 of the Code provides: "In making up the amount of money or credits which any person is required to list, or have listed or assessed, he will be entitled to deduct from the gross amount all debts in good faith owing by him," etc. Section 813 of the Code provides: "Depreciated bank notes, and the stock of corporations and companies, shall be assessed at their cash value; credits shall be listed at such sum as the person listing them believes will be received or can be collected thereon; and annuities at the value which the person listing believes them to be worth in money." If these sections were alone to be considered, we should be inclined to hold that shares of stock were not "credits," within the meaning of the statute; as in section 813 it is provided that the "stock of corporations" shall be assessed at its "cash value," while "credits" are to be listed "at such sum as the person listing them believes will be received or can be collected thereon." Viewing these sections alone, it would seem that a distinction was made between "stocks" and "credits." But section 802 of the Code provides: "The term 'credit,' as used in this title, includes every claim and demand for money, labor, or other valuable thing, and every annuity or sum of money receivable at stated periods, and all money or property of any kind secured by deed, mortgage or otherwise," etc. This definition is, in our judgment, broad enough to include stocks in corporations. We must construe all these sections together, and deduce therefrom the legislative intent.

2. ——: ——:
shares of stock
as credits.

In *Bridgman v. City of Keokuk*, 72 Iowa, 42, in an action wherein a stockholder in a loan and building association asked that his indebtedness be deducted from his stock, this court held that "stock" is not a "credit;" "it is not an indebtedness to its owners; but, on the contrary, is an interest in the property of the corporation." In *Jackson v. Chizum*, 78 Iowa, 209, the question arose incidentally, and it was not expressly decided. In *Equitable Life Ins. Co. v. Board of Equalization*, 74 Iowa, 181, it was held that among the debts of the plaintiff to its stockholders was the amount which they would be entitled to recover upon a present distribution of the assets of the company. These assets clearly must include the stock, and hence, if it be treated as a debt owing by the corporation to its stockholders, or which would be due to them if the business of the company was to be wound up, and its assets distributed to those entitled thereto, it would seem to us to follow that, as to the stockholders, the stock which they hold must, at least so far as the matter of taxation is concerned, be treated and considered as "credits." In the case last cited, in speaking of the assets of the corporation, the court, by Beck, J., says: "The word 'due,' used in these definitions and elsewhere, means 'owed,' and not payable *eo instanti*, but payable now or hereafter." Again: "The legal title of all property belonging to the corporation is in it. The equitable interest—the right to the profits and acquisition of the property—belongs to the stockholders. When they pay in their money on the capital of the corporation they part with the title to the money, and receive in its place a claim as *cestui que trust* upon the corporation for all profits made by it in managing the capital, and the right to have returned, when the corporation is wound up, the money paid in by them as its capital. * * * This right and claim of the stockholders is a property right; it is certain and determined.

The value of the right may be contingent and uncertain, but it is none the less a right to receive money from the corporation.. Here is a claim by the stockholders for which the corporation is liable. It is not now mature, but will become payable in the future. * * * The corporation being bound to pay the stockholders, its obligation to do so creates a 'debt,' according to the definitions above given." If, as is clearly held in this case, the obligation of the corporation to repay the stockholder the amount paid for his stock is a "debt" of the corporation to the stockholder, it is certain that as to him, for taxation purposes, at least, it must be treated as a "credit." See, also, *Hawkeye Ins. Co. v. Board of Equalization*, 75 Iowa, 770, where the doctrine announced above is followed and approved.

We are clear that the logical result of the reasoning in the Equitable Life case, above referred to, leads to the conclusion that the stock held in the bank by T. D. Lockman and J. H. Drake, respectively, was a "credit," and they should be permitted to deduct their respective indebtedness therefrom. This conclusion is not only satisfactory to us, but also conforms the holdings of this court to the doctrine announced by the federal courts as applicable to stock in the national banks. It would seem, if possible to do so without doing violence to our statutes, the same rule as to deducting debts from bank stocks should obtain as to banks, whether national or otherwise.

We do not think that chapter 39 of Laws of 1890 is in any way in conflict with the view herein expressed. It is clear that these appellants would have a right to deduct their indebtedness from the capital stock. The question presented is the proper construction of an act of congress. It is a federal question, and, if it had been decided by the supreme court of the United States, such decision is binding upon us. The power of the

state in the first instance to tax national banks is derived from the act of congress. *McCulloch v. Maryland*, 4 Wheat. 316; *Osborn v. Bank of the United States*, 9 Wheat. 738; *Weston v. Charleston*, 2 Pet. 449; *People v. Weaver*, 100 U. S. 539–543. It will be observed that our statute in its terms is not in conflict with the federal law. The federal statute prohibits the state from taxing the shares of national banks "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." Revised Statutes, United States, section 5219. In *Ruggles v. City of Fond du Lac*, 53 Wis. 436, 10 N. W. Rep. 565, under a statute exempting from taxation "so much of the debts due or to become due to any person as shall equal the amount of *bona fide* and unconditional debts by him owing," the court, in referring to a New York statute touching the same matter, said: "The statute referred to is similar to our section 1038, above mentioned, except that the deduction of debts is to be made from the value of all personal property, including moneyed capital, whereas under our statute it is only to be made from 'credits,' or, what is the same thing, from moneyed capital." The statute of Wisconsin, like ours, does not expressly prohibit the exemption in favor of the indebted shareholder in a bank. The court held that, the amount of the plaintiff's indebtedness should have been deducted from the value of his stock in assessing the same In *Bressler v. Wayne Co.*, 25 Neb. 468, 41 N. W. Rep. 356, under a statute much like ours, the same result was reached as in Wisconsin. See, also, *Miller v. Heilbron*, 58 Cal. 133. In *Wasson v. Bank*, 107 Ind. 206, 8 N. E. Rep. 97, it appears that the statute allowed the individual taxpayer to deduct *bona fide* debts, except debts of a certain specified class, from credits owned by him; and the question of the meaning of the word "credit," as used in the statute, was discussed, as was the construction to be placed

upon the words "moneyed capital," as used in the federal statute. The court said: "Were we at liberty to place our own construction upon the act [of congress], we should be very strongly inclined to hold that 'moneyed capital,' as therein used, has reference to capital invested as an investment for profit, whether in bonds, stocks, money loaned, or otherwise, and not to debts due to the taxpayer growing out of the ordinary affairs of business life." It was further said that the stockholders had a right to deduct their just debts from the assessed value of their shares of stock. We have referred thus briefly to the decisions of several of the state courts. The same doctrine has repeatedly been announced by the federal supreme court. In the case of *Evansville Bank v. Britton,* 105 U. S. 322, Justice MILLER said, referring to the Indiana law: "We are of the opinion that the taxation of bank shares by the Indiana statute, without permitting the shareholder to deduct from their assessed value the amount of his *bona fide* indebtedness, as in the case of other investments of moneyed capital, is a discrimination forbidden by the act of congress." *People v. Weaver,* 100 U. S. 539; *Pelton v. Bank,* 101 U. S. 143; *Cummings v. Bank,* Id. 153; *Supervisors v. Stanley,* 105 U. S. 305.

In the case of *Boyer v. Boyer,* 113 U. S. 689, 5 Sup. Ct. Rep. 706, Justice HARLAN, in an exhaustive opinion, reviews all the cases relating to this matter which have been decided by the United States supreme court, and deduces the following rules for the construction of the federal statute under consideration: *"First,* That the words 'at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens' refers to the entire process of assessment, which, in the case of the national bank shares, includes both their valuation and the rate of percentage of such valuation; consequently that the act of congress is violated if, in connection with a fixed percentage applicable to

the valuation alike of national bank shares and of other moneyed investments or capital, the state law establishes or permits a mode of assessment by which such shares are valued higher in proportion to their real value than is other moneyed capital. *Second*, That a state which permits individual citizens to deduct their just debts from the valuation of their personal property of every kind, other than national bank shares, or which permits the taxpayer to deduct from the sum of his credits money at interest or other demands to the extent of his *bona fide* indebtedness, leaving the remainder to be taxed, while it denies the same right of deduction from the cash value of bank shares, operates to tax the latter at a greater rate than other moneyed capital." The case of *Hepburn v. School Directors*, 23 Wall. 480, was relied upon by the supreme court of Pennsylvania as upholding the doctrine that, if the taxation of these shares of national banks was at no higher rate than other capital of a similar character, it did not violate the provision of the federal statute. So here it is claimed that, inasmuch as no one can deduct his indebtedness from any corporate stock he may own, the act of congress is not violated. In referring to the language used by the Pennsylvania supreme court, the United States supreme court in *Boyer v. Boyer, supra*, says: "If by this language it is meant that an illegal discrimination against capital invested in national bank shares cannot exist where no higher rate or heavier burden of taxation is imposed upon them than upon capital invested in state bank shares or in state savings institutions, we have to say that such is not a proper construction of the act of congress. Capital invested in national bank shares was intended to be placed upon the same footing of substantial equality in respect of taxation by state authority as the state establishes for other moneyed capital in the hands of individual citizens, however invested, whether in state bank

shares or otherwise."

In view of these decisions by the supreme court of the United States, it is clear that the holder of this stock must be placed in the same position of advantage, with reference to the right to deduct from the cash value of his stock his *bona fide* indebtednes, as the individual who owns no stock in any such corporation, but who has other "moneys and credits." In any event, we would not be justified, in the light of the adjudications, in deciding this case in accordance with the contention of the appellee, and thereby placing this court in an attitude of hostility to the decisions of the United States supreme court on a federal question.

For the error of the district court in refusing to deduct the value of the plaintiff bank's real estate from the value of its capital stock, and in refusing to allow plaintiffs Lockman and Drake to deduct their indebtedness, as heretofore stated, from the stock assessable to them, this case must be reversed, and it will be remanded to the district court for action in conformity with this opinion. REVERSED.