Chas. W. Morril and others v. F. J. Bentley, Treasurer, and others, Appellants.

**Taxation:** APPEAL: JURISDICTION. It is not essential that a transcript of the assessment of omitted property certified by the county treasurer be filed with the clerk of the district court to confer jurisdiction on appeal. The necessary jurisdictional facts may be established by a transcript of the assessment by the board of review or treasurer officially authenticated by certificate, or they may be agreed upon by the parties or admitted by demurrer, and thus it be made to appear that complaint was entered before the assessing officers, and that their decision thereon is to be reviewed.

**Same:** FOREIGN CORPORATIONS: TAXATION OF STOCK: EXEMPTION: STATUTES. Shares of corporate stock in a foreign manufacturing corporation held by a resident of this state are assessible, and are not exempted from taxation by the provisions of Code, section 1319, either expressly or by implication.

**Same:** CORPORATE STOCK: VALUE: EVIDENCE. The price at which a mere offer to purchase corporate stock is made is not competent

evidence of its value, although the actual price for which a commodity was sold may be shown on the question of its value.

**Same:** VALUATION BY TREASURER: PRESUMPTION. It will be presumed that the treasurer in placing a valuation upon property for the purpose of taxation acted upon sufficient evidence, and his valuation will be sustained in the absence of other competent evidence on the subject.

**Same:** TAXATION OF CORPORATE STOCK: CREDITS: DEDUCTION OF DEBTS: STATUTES. Shares of corporate stock are not credits within the meaning of the statutes relating to taxation so as to authorize the holder to deduct his debts from the value thereof.

*Appeal from Black Hawk District Court.*—HON. F. C. PLATT, Judge.

TUESDAY, APRIL 4, 1911.

THE county treasurer of Black Hawk County assessed as omitted property certain shares of common and preferred stock in the United States Gypsum Company to each of the twenty-five appellees herein, and an appeal therefrom was taken by each to the district court. By agreement the appeal of Charles Morril was heard, the findings of the court therein to be conclusive, save as to number of shares held by each, and the deductions on account of any debts which might be offset against the same. The district court set aside the several assessments, and the treasurer appealed. Subsequently the plaintiffs also appealed. On rehearing affirmed on plaintiffs' appeal, reversed on defendants' appeal, and remanded.

*Edwards & Longley* and *McCoy & McCoy (Robt. O. Brennan,* City Solicitor, on the brief), for appellants.

*Myers & Spies* and *Mears & Lovejoy,* for appellees.

SHERWIN, C. J.—The foregoing statement of the case

and the first and second divisions of this opinion are adopted from the opinion of Mr. Justice Ladd on the original submission of this appeal.

I. No transcript of the assessment of omitted property certified by the county treasurer was filed with the clerk of the district court. As this was not essential to jurisdiction, an appeal having been taken, the court did not err in hearing the appeal. In *White v. City of Marion*, 139 Iowa, 479, the taxpayer recited the facts in a petition to which a demurrer was filed and a stipulation that the exemption was claimed and denied by the city and this was held sufficient; it being said: "All required is that the complaint before the board, its decision thereon, and the appeal to be shown in order that the court before whom the case is to be tried may know the issue, and that there is some decision to be reviewed." In *Murrow v. Heath*, 146 Iowa, 347, an official demand of payment of taxes assessed with interest by the county treasurer reciting the assessment as made was held to be showing enough to exact a hearing. All essential is that the transcript of the assessment by the board of review or treasurer be officially authenticated by certificate, or agreement of parties, or the facts be admitted by demurrer of such body or official or agreed upon, so that it appear that complaint or objection was made to the assessing body or officer and the decision made thereon which is to be reviewed. Anything to the contrary in *Peterson v. Board of Equalization*, 138 Iowa, 717, is to regarded as *dicta*, for there was nothing in the record therein showing that an appeal had been taken. In the case at bar objections to the several assessments were filed with the treasurer, and, notwithstanding these, the assessment complained of was made. The court rightly heard the appeal.

II. The county treasurer assessed sixteen shares of preferred stock and ten shares of common stock in the United States Gypsum Company to Charles Morril as hav-

1. TAXATION: appeal: jurisdiction.

ing been omitted from taxation in the years 1896, 1897,

2. SAME: foreign corporations: taxation of stock: exemption: statutes.

and 1898; the aggregate amount of taxes with interest being $139.86. The company was a corporation organized in New Jersey, and, unless the shares were exempt from taxation under section 1319 of the Code, they were assessable. *Judy v. Beckwith,* 137 Iowa, 24. If any doubt as to this was suggested in *First National Bank of Albia v. City Council,* 86 Iowa, 28, it was removed by the above decision. To the same effect, see *Cook v. City of Burlington,* 59 Iowa, 251. The corporation was engaged in manufacturing plaster in this and other states. Its capital stock consisted of $3,666,300 of preferred stock and $2,249,600 of common stock of the par value of $100 per share issued in payment of properties acquired of several smaller concerns. It owned land in the state valued at $73,896.16 and buildings, machinery, and the like worth $137,724.93. Four thousand, one hundred and forty-four shares of its preferred and two thousand, four hundred and eighty-seven shares of its common stock were owned by residents of the state, but the assessed value of these was less than that of the company's real and personal property therein. The section of the statute under which exemption is claimed provides that:

Any firm or corporation who purchases, receives or holds property of any description for the purpose of adding to the value thereof by any process of manufacturing, packing of meats, refining, purifying, or by the combination of different materials, with a view of making gain or profit by so doing, and selling the same, shall be held a manufacturer for the purpose of this title, and he shall list for taxation such property in his hands, but the average value thereof to be ascertained as in the preceding section, whether manufactured or unmanufactured, shall be estimated upon those materials only which enter into its combination or manufacture. Machinery used in manufacturing establishments shall, for the purpose of taxation, be

regarded as real estate. Corporations organized under the laws. of this state for pecuniary profit and engaged in manufacturing as defined in this section, and which have their capital represented by shares of stock shall, through their proper accounting officers, list their real estate, personal property and moneys and credits in the same manner as required of individuals. The owners of capital stock of manufacturing companies as herein provided for, having listed their property as above directed, shall be exempt from assessment and taxation on such shares of capital stock.

It will be noted that this sections defines (1) a manufacturer; (2) directs that the average value of materials entering into the product shall be the assessable value and that machinery shall be assessed as real estate; (3) that certain corporations organized under the laws of this state "which have their capital stock represented by shares of stock" shall list their property like individuals, and the only doubt is whether the last sentence refers to the companies just previously mentioned or to corporations generally. The portions defining manufacturer and how assessable value shall be ascertained, and directing that machinery be treated as part of the realty, are quite as applicable to foreign as to domestic corporations, but, unless the remainder relates to domestic corporations, the restriction thereto in next to the last sentence is meaningless. If the shares of all the manufacturing corporations were intended to be exempt, why direct how the property of a particular class of corporations shall be listed? The property of foreign corporations is made assessable by the Constitution the same as that of individuals (article 8, section 2), and section 1312 provides for listing the same. Section 1323 of the Code relates solely to corporations organized under the laws of this state, so that the portion authorizing the deduction of the value of real estate is not applicable to corporations organized elsewhere. Section 1327 of the Code has refer-

ence to real estate of domestic corporations as it relates
to real estate returned in the statement of the corpora-
tions as part of their assets, and no statement of assets is
exacted from foreign corporations, save of specified classes.
Section 1323 provides that the shares of stock in every
such corporation (organized under the laws of the state)
except when otherwise provided shall be assessed to the
owners thereof at its principal place of business, and sec-
tion 1325 declares the corporations liable for the taxes
levied thereon.

But for the exemption of the shares in section 1319
quoted and a different assessment being exacted the gen-
eral mode of reaching the property of domestic corpora-
tions as prescribed in the above sections must have ob-
tained. The evident design of the lawmakers was to pro-
vide a different scheme of assessment for domestic· manu-
facturing corporations, and this, as we think, clearly ap-
pears from the language employed. Exemption of the
shares of the stock is allowed only to (1) "owners of
capital stock of manufacturing companies as herein pro-
vided for," and (2) which have "listed their property as
above directed." The only companies "provided for" in
the section are those organized "under the laws of this
state," and these only are directed as to the manner of
listing their property. Exemptions from taxation should
be expressed in unmistakable terms. They are not to be
inferred or implied from doubtful or ambiguous language.
The presumption is that all property is taxable. *Lacy v.
Davis,* 112 Iowa, 106; *In re Dille,* 119 Iowa, 575; *Sturges
v. Carter,* 114 U. S. 511 (5 Sup. Ct. 1014, 29 L. Ed.
240). In the last case shares in a foreign corporation
were held to be assessable notwithstanding those in do-
mestic corporations were exempt from taxation. See, also,
*Commonwealth v. Lovell,* 125 Ky. 491 (101 S. W. 970).
In *Judy v. Beckwith,* 137 Iowa, 29, stock in a foreign
manufacturing corporation was held to have been rightly

assessed; the court saying: "Without taking time for
further reference to the statue, we feel entirely safe in
the assertion that there is no existing legislation in this
state which expressly or by implication excepts from the
category of taxable property the shares of capital stock
owned or held by residents of the state in a foreign cor-
poration." The circumstance that such corporations are
expressly authorized without unseemly restrictions to do
business in this state does not militate against this conclu-
sion. See sections 1638, 1639. Foreign corporations, not
manufacturers, are admitted on precisely the same terms,
and there is no apparent reason for discriminating be-
tween them and those engaged in manufacturing unless
done within the state, and no such limitation is to be
found in the statutes. Nor is there anything in the argu-
ment based on the comity between states; for, in the
absence of proof to the contrary, the laws of the state
where the company was organized are presumed to be like
those of this state. The contention that the construction
adopted would result in discrimination between domestic
and foreign corporations engaged as manufacturers is un-
founded. Because of the statute, the property of each is
assessed to it in precisely the same manner. If there is
discrimination, it is between respective shareholders, and
that was disposed of in *Judy v. Beckwith, supra,* as was
the argument that such taxation would be unjust. We are
of the opinion that the shares of stock were not exempt
from taxation under section 1319 of the Code, and that
the district court erred in setting aside the assessments
of the county treasurer.

III. The preferred stock provides for seven percent
annual dividends, payable semiannually, which are cumu-
lative. A dividend of three and three-fourths
percent was paid in 1906, and five percent
dividends were paid in the years 1907
and 1908. The only evidence offered by the plaintiff

3. SAME: corpor-
ate stock:
value:
evidence.

as to the value of the stock was the testimony of a witness, who said that it had no market value, and that he knew nothing about its value farther than the fact that he had been offered therefor a certain amount per share by Chicago brokers. In so far as his knowledge of the value of the stock was based solely on the offers that he had received for it, we think ·there was an entire failure of proof. It is not competent to prove value by offers made by prospective purchasers alone. While an offer to sell may in some cases be an indication of value, we know of no cases holding that an offer to buy at a certain price is competent evidence of value. The general rule seems to be directly the reverse. *Drury v. Railway Co.*, 127 Mass. 571; *Watson v. Milwaukee Ry. Co.*, 57 Wis. 332 (15 N. W. 468); *City v. Harland*, 99 Cal. 538 (34 Pac. 224); *Illinois Cent. R. Co. v. Le Blanc*, 74 Miss. 626 (21 South. 748); *Railway Co. v. Pearson*, 35 Cal. 247; *Railway Transfer Co. v. Gluek*, 45 Minn. 463 (48 N. W. 194); *Stewart v. James*, 1 Neb. (Unof.) 507 (95 N. W. 778); *Railway Co. v. Cleary*, 125 Pa. St. 442 (17 Atl. 468, 11 Am. St. Rep. 913); *Railway Co. v. Keith*, 53 Ga. 178. Many other cases announcing the same rule might be cited, but it seems unnecessary. This court has held that the actual price for which a commodity has been sold may be shown on the question of value, but we have never gone so far as to hold mere offers on the part of a prospective purchaser competent. Such a rule would open the door for the introduction of easily manufactured proof, and would be exceedingly dangerous. We are not willing to adopt it.

The witness having based his estimate of value solely on an incompetent foundation, it was entitled to no weight, and, the law presuming that the treasurer acted upon sufficient evidence, his valuation must be sustained. *Bank v. City*, 136 Iowa, 208; *Frost v. Board*, 114 Iowa, 103; *Gibson v. Cooley,*

4. Same: valuation by treasurer: presumption.

129 Iowa, 529. As to the common stock, we think the trial court warranted in finding its value to be $5 per share.

IV. The treasurer refused to deduct from the value of the plaintiff's stock his debts. The trial court also found as a matter of law that the shares of stock in question did not constitute credits within the meaning of the statute, and that the plaintiff's debts could not be deducted from their value. The plaintiffs have appealed from such finding. The question presented requires us to determine the meaning of the term "credit" as used in the taxation statute, and it also calls for a consideration of some of the prior decisions of this court. Code, section 1309, is in the following language: "The term 'credit,' as used in this chapter, includes every claim or demand due or to become due for money, labor or other valuable thing, every annuity or sum of money receivable at stated periods, and all money or property of any kind secured by deed, title bond, mortgage or otherwise, but pensions of the United States or any of them, or salaries, or payments expected for services to be rendered, are not included in the above term." The plaintiffs contend that this section is broad enough to include shares of corporation stock within the meaning of the term "credit," and that, being credits, they are entitled to have deducted from the value thereof their just debts as provided in section 1311. It is manifest that section 1309 should not be considered alone in determining whether the Legislature intended to therein designate corporation shares of stock as credits. It is a familiar rule that, in arriving at the legislative intent relative to a particular matter, the court should look to the entire legislation on the subject. We go then at once to a consideration of the several enactments, which we deem material to a proper construction of the term "credit" as used, keeping in mind the rule that all property not

5. SAME: taxation of corporate stock: credits: deduction of debts: statutes.

specifically exempted therefrom is subject to taxation. It is of first importance in our judgment to note the classification of property subject to taxation as fixed by the law. In the Code of 1851, section 456, it was provided: "All other property, real and personal, within this state, is subject to taxation in the manner herein directed," and this section is intended to embrace "lands . . . ferry franchises . . . which for the purposes of this chapter shall be considered real property; horses and neat cattle; mules and asses; sheep and swine; money; whether in possession, on deposit, and including bank bills; money, property, or labor, . . . and whether within this state or not; mortgages and other like securities, and accounts bearing interest; stocks or shares in any bank or company, incorporated or otherwise, whether incorporated by this or any other state, and whether situated in this state or not; . . . and all other property not above exempted, although not herein specified." Section 712 of the Revision of 1860 and section 801 of the Code of 1873 contained substantially the same provisions, so far as they related to moneys, credits, and corporation stock. The Code of 1897, section 1308, provides: "All other property, real or personal, is subject to taxation in the manner prescribed, and this section is also intended to embrace: ferry franchises and toll bridges, which, for the purpose of this chapter are considered real property; horses, cattle, mules and asses over one year of age; sheep and swine over six months of age; money whether in possession or on deposit; and credits, including bank bills, government currency, property or labor due from solvent debtors on contract or judgment, mortgages or other like securities, accounts bearing interest, property situated in this state belonging to any bank or company, incorporated or otherwise, whether incorporated in this or any other state; corporation shares or stocks not otherwise assessed or excepted."

It will be noticed that this section is a substantial re-enactment of previous ones on the subject, and that in all of the statutes there is a specific, separate classification of moneys, credits, and corporation shares of stock; the latter being in all instances classified entirely separate from and clearly independent of credits.   In the Code of 1851, section 457, the term "credit" was defined as follows, so far as material here:   "The term 'credit,' as used in this title, includes every claim and demand for money, labor or other valuable thing."   The same enactment appears in the Revision of 1860 and in the Code of 1873, and section 1309 of the present Code is the same in effect; the changes therein being only minor ones not affecting the meaning of the term "credit."   Again, the Code of 1851, section 471, provided for the manner of classification and assessment as follows, so far as material:   "The list shall contain; first, his lands; second, his personal property by the following particulars:   .  .  .  amount of moneys and credits;   .  .  .   amount in stock or shares of any corporation or company."   By the Revision of 1860, section 732, the board of supervisors was required to furnish each assessor a suitable book "properly ruled and headed, in which to enter the following items:   .  .  .   personal property as follows:   .  .  .   amount of moneys and credits:   .  .  .   amount of stocks or shares in any corporation or company, not required by law to be otherwise listed and taxed.   .  .  ."   The same classification of personal property for assessment was required in the Code of 1873, section 821.   Section 1360 of the present Code requires an assessment roll which shall show the moneys and credits, but which says nothing about corporate shares of stock.   But in view of the consistent requirement for a separate classification thereof up to the enactment of section 1360 and the enactment of chapter 30, Acts of Twenty-seventh General Assembly, Code Supp. 1907, section 1360, which again includes corporation stocks in the

roll, in addition to moneys and credits, it is evident that
its omission in the Code of 1897 was an oversight. How-
ever, the only material part of the matter is that the sepa-
rate classification of corporation stock is at present a part
of the requirement of the statute. The enactment is in
our judgment a definite legislative recognition of a distinc-
tion between the term "credit," as used in section 1309,
and corporation stock. This distinction is further mani-
fested in still other sections of the past and present stat-
utes. Section 466 of the Code of 1851 provided for the
valuation of personal property as follows: "Depreciated
bank notes and depreciated stocks or shares in corpora-
tions or companies may be listed at their current value
and rate; credits shall be listed at such sum as the per-
son listing them believes will be received or can be col-
lected. . . ." Substantially the same provisions were
contained in the Revision and in the Code of 1873. The
Code of 1897, section 1310, provides: "Moneys, credits
and corporation shares of stock, except as otherwise pro-
vided, . . . and corporation shares of stock not other-
wise taxed in kind, . . . shall be assessed as provided
in this chapter." Code 1897, section 1311, provides that
"in making up the amount of money or credits which
any person is required to list, or have listed or assessed,
including actual value of any building and loan shares, he
will be entitled to deduct from the actual value thereof the
gross amount of all debts in good faith owing by him."
Excepting the inclusion therein of building and loan shares
as a part of the credits, this is the same statute that has
been in force since 1851. In the opinion of the writer a
careful study of these various exactments will convince
any candid mind that the statute never intended to include
in the term "credit" corporation shares or stocks. It
does not do so specifically, and the other enactments re-
lating thereto in my judgment remove all opportunity for
including such stocks therein by implication.

The Legislature has steadfastly adhered to the policy of specifically classifying corporation stocks as a separate and distinct kind of personal property, and has just as distinctly always given moneys and credits another classification. To hold that such stocks are included in the general term "credit," as used in section 1309, would be to disregard the most elementary rules of construction, and to say that the Legislature did not mean what its language plainly expresses. If corporation stock is not classed as credits by section 1309, it is clear that it should not be so classified by the court. Stock does not represent a demand due or to become due for money, labor, or other valuable thing. It does not represent any kind of just demand, so long, at least, as the corporation is a going concern. It represents nothing that the corporation is bound either legally or morally to pay. If perchance, the corporation is making money, the stockholder may be entitled to dividends, but he has no right to any part or parcel of the corporation property, nor is the corporation indebted to him unless it be for an already declared dividend, and whether a dividend be declared or not depends wholly upon the financial prosperity of the corporation. We look now to the authorities on the above proposition.

In *Bridgman v. City of Keokuk,* 72 Iowa, 42, the question was whether shares of stock in a building and loan association were credits within the meaning of the statute, and it was said: "We must therefore inquire whether stock in corporations is to be classed as 'credits.' Stock in corporations ordinarily—and there is nothing to show that the stock of plaintiff in question is subject to a different rule—is not a credit. It is not an indebtedness to its owner, but, on the contrary, is an interest in the property of the corporation. Its owner holds an equitable interest in the property of the corporation, which is represented by the term 'stock' and the extent of his interests is described by the term 'shares.' The expression 'shares

of stock,' when qualified by words indicating number and ownership, express the extent of the owner's interest in the corporation property. The interest is equitable, and does not give him the right of ownership of specific property of the corporation. But he does own the specific stock held in his name, and under the rules of law the property of the corporation is held by the corporation in trust for the stockholders. It will be readily seen that a share of stock is a thing owned by the stockholder. It is in no sense a debt owing to the stockholder. It is not therefore a credit. Our statutes so recognize it. See Code, pages 802, 813, 818." *In re Kauffman's Estate,* 104 Iowa, 639; *Investment Co. v. Ft. Dodge,* 125 Iowa, 148, and *Murrow v. Heath,* 146 Iowa, 347, also follow this rule. The rule there announced is undoubtedly correct, and is sustained by the great weight of authority. See 4 Thompson on Corporations, sections 3411, 3468, and decisions cited; 1 Cook on Corporations, section 12; *Bank v. Chambers,* 21 Utah, 324 (61 Pac. 560, 56 L. R. A. 346); *Chapman v. Bank,* 56 Ohio St. 310 (47 N. E. 54); *Primm v. Fort,* 23 Tex. Civ. App. 605 (57 S. W. 89, 972); *Dutton v. Bank,* 53 Kan. 440 (36 Pac. 719); *Niles v. Shaw,* 50 Ohio St. 370 (34 N. E. 162); *Bank v. Chambers,* 182 U. S. 556 (21 Sup. Ct. 863, 45 L. Ed. 1227); *Williams v. Weaver,* 75 N. Y. 30; *Ins. Co. v. Brown,* 142 Mass. 403 (8 N. E. 134). Many other cases to the same effect might be cited. A debt is generally defined as a sum of money due by certain and express agreement. It is founded upon an express or implied contract to pay a certain amount at a certain time. 22 Am. & Eng. Enc. Law, 580; *Merriwether v. Garrett,* 102 U. S. 472 (26 L. Ed. 197); *Bailes v. Des Moines,* 127 Iowa, 126. We are in trouble with some of our own cases, however, notwithstanding the plain intent of the statute as it appears to us. Within a year after the filing of the opinion in the *Bridgman* case, an opinion in *Equitable Life Ins.*

.Co. v. Des Moines, 74 Iowa, 178, was filed in which it was held, without referring to the Bridgman case, that the outstanding shares of stock of the insurance company constituted debts within the meaning of the law, and should be deducted from its moneys and credits, and this decision was followed without discussion in Ins. Co. v. Board, 75 Iowa, 770. We think no just distinction can be made between the term "debts," as used in that opinion, and the term "credits," as used in the statute and herein. If any distinction in principle can be made, it must be based on the fact that in the Equitable case there was a reserve fund in the hands of the company, which was required by law, but we think that fund only enlarged the property of the corporation and did not change the character of its stock. See in this connection Ins. Co. v. Board of Review, 131 Iowa, 254. In Bank of Albia v. City Council, 86 Iowa, 28, it was held that shares of stock in a national bank were credits within the meaning of section 802 of the Code of 1873, as construed in the Equitable Life Ins. case, supra, and under the terms of the United States statutes. It was said in the opinion, however, referring to some of the other sections of the statute which we have quoted: "If these sections were alone to be considered, we should be inclined to hold that shares of stock were not 'credits' within the meaning of the statute." It is worthy of note here that the Supreme Court of the United States does not agree with the decision in the Bank of Albia case in so far as it was based on the federal statutes. Bank of Garnett v. Ayers, 160 U. S. 660 (16 Sup. Ct. 412, 40 L. Ed. 573); Bank v. Chapman, 173 U. S. 205 (19 Sup. Ct. 407, 43 L. Ed. 669). Our own later decisions follow the Bridgman case, and in effect overrule the Equitable Life Ins. case and the decisions based thereon, in so far as they affect the question under consideration. It is further to be noted that in 1897 in enacting section 1311 of the Code,

the Legislature amended section 814 of the Code of 1873 by expressly providing that building and loan shares of stock should be classed as credits. It is evident, therefore, that it was the legislative understanding that the *Bridgman* case established the rule governing the matter, and that the amendment was made to except from its operation building and loan shares. It was a legislative declaration that no shares of stock other than building and loan shares should be considered as credits in applying the statute. See, also, as throwing light on the question, Code, sections 1322, 1323, 1324. It is evident that our own decisions are not in harmony on the question under consideration, and, such being the case, we should without hesitation give the statutes controlling the matter their proper construction. We conclude, therefore, that the several decrees setting aside the assessments made by the treasurer must be reversed.

On plaintiffs' appeal the judgment must be affirmed. *Reversed* on defendant's appeal and remanded for a decree in harmony therewith.—*Affirmed* on plaintiffs' appeal.