DENNIS, COUNTY TREASURER, APPELLANT, *v.* FIRST NAT. BANK OF GREAT FALLS, RESPONDENT.

(No. 4,276.)

(Submitted January 9, 1919.   Decided February 3, 1919.)

[178 Pac. 580.]

*Taxation—National Bank Stock—Power of State—Statutes—Invalidity.*

Taxation—National Bank Stock—How Assessable.
   1.   The stock of a national bank (like that of a state bank) is assessable at its full cash value, less the amount of property representing that stock which has been otherwise taxed.

Authorities discussing the question of state taxation of national banks are collated in notes in 45 L. R. A. 737; 3 L. R. A. (n. s.) 584; 10 L. R. A. (n. s.) 947; L. R. A. 1916C, 386.

Same—National Banks—Shares of Stock.
    2.  The taxing power of the state with reference to a national bank is limited to a tax upon its real estate assessable to the bank, and to one upon its shares of stock assessable to the holders thereof.

Same—Bank Stock—Statute—Invalidity.
    3.  *Held,* that Chapter 31, Laws of 1915, amendatory of sections 2503–2505, Revised Codes, prescribing the mode of assessment of bank stocks, is invalid in so far as it provides that the *assessed* (instead of the actual) valuation of the bank's real estate shall be deducted from the total value of its capital stock, surplus and undivided profits.

*Appeal from Eighth District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by Lee Dennis, Treasurer of Cascade County, Montana, against the First National Bank of Great Falls, Montana, for and on behalf of its stockholders. From a judgment for defendant, plaintiff appeals. Affirmed.

*Mr. Geo. A. Judson, Mr. H. R. Eickemeyer* and *Mr. La Rue Smith,* for Appellant, submitted a brief; *Mr. Frank Woody,* Assistant Attorney General, argued the cause orally.

The provisions of Chapter 31, Laws of 1915, apply to all banks or banking corporations within the state, so that there is no question of discrimination against national banks as such. (*Illinois Nat. Bank* v. *Kinsella,* 201 Ill. 31, 66 N. E. 338; *Mercantile Nat. Bank* v. *New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *First Nat. Bank* v. *Chapman,* 173 U. S. 205, 43 L. Ed. 69, 19 Sup. Ct. Rep. 407; *Talbott* v. *Board of County Commrs. of Silver Bow Co.,* 139 U. S. 438, 35 L. Ed. 210, 11 Sup. Ct. Rep. 594; *First Nat. Bank* v. *Chehalis Co.,* 166 U. S. 440, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629.)

The only question to be determined in resolving the validity of the method of assessment provided for by Chapter 31 is, whether or not the methods of assessment directed by the statute amount to double taxation. It is clear that the method directed does not result in double taxation, for, as is pointed out in *Illinois National Bank* v. *Kinsella, supra,* the real estate is assessed to the bank while the shares of stock are assessed to shareholders, and each is a separate kind of property.

It remains, then, to determine merely whether any of the shares of stock of the respondent have been taxed which represent property of respondent, within the state, and is otherwise taxed; that is to say, whether any of the shares of stock taxed represent real property. The full cash value of real property of respondent represented by its capital stock is not the amount at which it carries its real estate upon its books, but is the amount at which the property would be taken in payment of a just debt due from a solvent creditor. (*Wells-Fargo. & Co.* v. *Harrington,* 54 Mont. 235, 169 Pac. 463.) This is also the assessed value. The assessor could not assess it for more. And if he did not assess the balance as shares of stock, that portion would escape taxation altogether.

It has repeatedly been held that the deduction of the assessed value of real estate from the capital of the bank and assessment of the balance to shareholders is not invalid as constituting double taxation.

The Constitution and statutes of Utah as reviewed in the decision of the United States supreme court in *Commercial Nat. Bank* v. *Chambers,* 182 U. S. 556, 45 L. Ed. 1227, 21 Sup. Ct. Rep. 863), were substantially the same as those in Montana. The statute on assessment of bank stock provided' for deducting from the value of the shares a sum in the same proportion to such value as the assessed value of the real estate of the bank bears to the whole amount of capital, surplus, reserve and undivided profits. This method of assessment was upheld as not constituting double taxation, and the court upheld the action of the assessor in refusing to deduct the assessed value of real estate located out of the state and owned by the bank. (See, also, *Crocker* v. *Scott,* 149 Cal. 575, 87 Pac. 102; 37 Cyc. 832.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Appellant, submitted a supplemental brief.

Section 2502, Revised Codes, requiring all property to be assessed at full cash value was in full force and effect when Chap-

ter 31 was passed, and it must have been the theory of the legislature in enacting such Chapter that the administrative officers would comply with the mandatory provision of section 2502, and that consequently the assessed value and the full cash value would be approximately the same. If the administrative officers had complied with the mandatory provision of this section and had assessed the real estate of the bank at its full cash value, it could not successfully be contended that Chapter 31 was unconstitutional. And this being true, the contention of respondent resolves itself into nothing more nor less than a contention that because the administrative officers have violated the mandatory and positive provisions of section 2502, such violations render Chapter 31 unconstitutional, a contention which merits no consideration whatever. (*Pullen* v. *Corporation Commission,* 152 N. C. 548, 68 S. E. 155; *Caldwell Land & Lumber Co.* v. *Smith,* 151 N. C. 70, 65 S. E. 641; *Valley Inv. Co.* v. *Board of Review,* 152 Iowa, 84, 131 N. W. 669; *Jenkins* v. *Neff,* 47 App. Div. 394, 62 N. Y. Supp. 321; affirmed in 163 N. Y. 320, 57 N. E. 408, and in 186 U. S. 230, 46 L. Ed. 1140, 22 Sup. Ct. Rep. 905; *In re First Nat. Bank County Commissioners,* 25 N. D. 635, L. R. A. 1915C, 386, 146 N. W. 1064; *Appeal of Barrett,* 73 Conn. 288, 47 Atl. 243; *Corporation Commission* v. *J. K. Morrison & Sons Co.,* 155 N. C. 53, L. R. A. 1915C, 380, 70 S. E. 1079; note to *State Board* v. *People ex rel. Goggin,* 58 L. R. A. 600; *Second Ward Sav. Bank* v. *Leuch,* 155 Wis. 493, 144 N. W. 1119, 1122; *Lippincott* v. *Lippincott,* 75 N. J. L. 795, 69 Atl. 502; *United States Elec. etc. Co.* v. *State,* 79 Md. 63, 28 Atl. 768; *Commonwealth* v. *Virginia, V. & T. Co.* (Va.), 66 S. E. 853; *Scandinavian American Bank* v. *Pierce Co.,* 161 Pac. 469.)

*Messrs. Cooper, Stephenson & Hoover,* for Respondent, submitted a brief; *Mr. Sam Stephenson* argued the cause orally.

The contention of respondent is that the county assessor of Cascade County violated the provisions of section 17 of Article XII of the Montana Constitution in the manner in which he

undertook to assess the property of the First National Bank and its stockholders. The language of the Constitution is: ''But this shall not be construed so as to authorize the taxation of the stocks of any company or corporation when the property of such company or corporation represented by such stocks is within the state and has been taxed.''

Notwithstanding the citation of numerous decisions, appellant has carefully neglected to cite the case of *Daly Bank etc. Co.* v. *Board of Commrs.,* 33 Mont. 101, 81 Pac. 950, which very lucidly construes the provisions of section 17, Article XII, and in fact contains a clear and concise decision upon the very point, and the only point of contention in this case. We call particular attention to the following language: ''To the extent that the capital stock is represented by property belonging to the state bank or trust company, and which property is liable to taxation, to that extent the stock of that bank or trust company is not taxable.''

It is true that the *Daly Bank Case* had to do with a state bank and not with a national bank, but under the limitation placed by Congress upon the right of a state to tax national banks as contained in section 5219 of the federal statutes, any constitutional limitation affecting the right of the state to tax state banks must certainly be applicable to national banks. This court did not say in the *Daly Bank Case,* ''To the extent that the real estate had been valued by the assessor, the stock of that bank is not taxable,'' but it said, ''To the extent that the capital stock is represented by real estate which is liable to taxation in the state of Montana, to that extent the stock of the bank is not liable to taxation.''

MR. JUSTICE COOPER delivered the opinion of the court.

In 1915 the legislative assembly enacted Chapter 31 (Laws 1915, p. 45), amendatory of sections 2503–2505 of the Revised Codes, relating to the assessment of real estate owned by banks, national and state, and shares of stock of such institutions. Section 1 of the Act provides: ''All shares of stock in state and

national banks and banking corporations, whether of issue or note [not?], existing by authority of the United States or of this state, and located within this state, and doing business within the state shall be assessed to the owners thereof; * * * all such shares must be listed and assessed with regard to their value at 12 o'clock noon, on the first Monday of March of each year, to be ascertained by adding the surplus and undivided profits to the face value of such shares, provided, that if any portion of the capital stock of any bank or banking corporation herein named, shall be invested in real estate and such bank or banking corporation shall hold title thereto, the assessed valuation of such real estate shall be deducted from the total value of the shares of stock of such bank' or banking corporation * * * and such real estate shall be assessed to the bank or banking corporation holding the same, as other real estate. The persons or corporations who appear upon the records of the bank or banking corporation herein named, to be the owners of shares at the close of the business day next preceding the first Monday in March in each year, shall be taken and deemed to be the owners thereof for the purpose of this section. Such shares of stock shall not be assessed at any higher rate than other property and shall be subject to all deductions allowed or given in the assessment of other property."

Section 2 provides that the bank shall pay the assessment upon the shares above mentioned, and that for convenience their assessment shall be entered on the personal property list in the name of the bank.

· Section 3 prescribes the duties of bank officers, requiring them to furnish to the assessor certain information with relation to the capital stock, surplus, *etc.*, of the bank.

Pursuing the provisions of the Act, the assessor of Cascade county assessed the shares of the capital stock of the First National Bank of Great Falls more particularly described below. The bank refused to abide by the assessment and a suit was instituted by the treasurer of the county against the bank to have determined the rights of the parties. The matter was submitted

to the court on an agreed statement of facts, the more salient features of which may be briefly epitomized thus:

It is agreed that the cashier of defendant bank delivered to the assessor the statement required by section 2 of the Act, including the face value of the bank's capital stock ($200,000), the amount of surplus ($150,000), and undivided profits · ($35,161.90), making a total of all three items of $385,161.90; that $344,358.98 of this amount was represented by and invested in real estate owned by the bank and situate in Montana, upon all of which the taxes have been duly paid by the bank; that the real estate owned by it in Cascade county was for the year 1917 assessed by the assessor and valued for assessment at the sum of $229,730; that the assessor, acting under the provisions of section 1 of the statute above, deducted from the total of capital stock, surplus, and undivided profits amounting to $385,161.90 the sum of $229,730, the assessed valuation placed by him upon the bank's real estate located in Cascade county, and thus ascertained that there remained the sum of $155,431.90, not represented by real estate and taxable to the stockholders of the bank as provided by the statute, and assessed such amount at seventy-five cents upon the dollar, making a total of $116,575; that agreeably to a ruling of the state board of equalization that all bank stock should be assessed at sixty-five cents upon the dollar the sum last above mentioned was reduced to $101,030, at which amount the shares were assessed, the tax levied amounting to $3,705. It was further agreed that if the contention of the bank should be sustained, *i. e.,* that the assessor should have deducted from the total of capital stock, surplus and undivided profits, $385,161.90, the amount invested in real estate owned by it, to-wit, $344,358.98, there would have remained $40,902.92 assessable to the stockholders, which, assessed at sixty-five cents upon the dollar (agreed to be the true valuation for present purposes), would have been of the assessable value of $26,586.89 only, and that the legal tax on that amount for the year in question would have been but $975 instead of

$3,705.26, which sum of $975 was tendered and paid into court by the bank.

The district court found in favor of the defendant's contention and entered judgment accordingly. The county treasurer has appealed.

The trial court in its preface to the "conclusions of law" stated the point at issue in these words: "The only question presented by the facts in this case is whether the *actual* amount of real estate investments or the *assessed* value of the real estate of the defendant should be deducted from the aggregate of the capital, surplus and undivided profits in ascertaining the value of the shares of the capital stock of the defendant for taxation, section 1 of Chapter 31 above providing that 'the *assessed* valuation of such real estate shall be deducted from the total value of the shares of stock,' *etc.*" The court concluded: "That the assessment of the stock of the defendant  *  *  *  is illegal and void,  *  *  *  and that $975 was the total amount of legal assessment that could be levied and assessed against the stockholders of the bank." This in effect means that, inasmuch as the assessor's action in assessing the property in question as he did was in substantial compliance with the provisions of Chapter 31, the statute itself is as illegal and void as the assessment, and that if we uphold the judgment, the Act must of necessity be declared unconstitutional.

Section 1 of Article XII of the state Constitution reads thus: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a *just* valuation for taxation of *all property,* except that specially provided for in this Article."

Section 17 of the same Article is as follows: "The word property as used in this Article is hereby declared to include [1]. moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership, but this shall not be construed so as to authorize the taxa-

tion of the stocks of any company or corporation when the property of such company or corporation represented by such stocks is within the state and has been taxed.''

''All taxable property must be assessed at its full cash value,'' says section 2502 of the Revised Codes, and stocks of banks, national or state, fall within the definition of ''property'' given in section 17 of Article XII above, and must be assessed at their *full cash,* not *assessed,* value, except to the extent that they are represented by real estate otherwise taxed. In *Daly Bank etc. Co.* v. *Board of Commrs.,* 33 Mont. 101, 81 Pac. 950, this court said, referring to section 17, *supra:* ''As that section of the Constitution is in the nature of a prohibition, it is so far self-executing as to prohibit the assessment upon the stocks of a bank or trust company of any greater valuation than the full cash value of such stocks, less the amount of the property representing that stock, which is assessed to the bank or trust company.''

With the doctrine there enunciated, we are in full accord; and we affirm that the principles there laid down apply with equal force to national banks doing business within this state. The framers of our Constitution in the matter of providing the necessary revenues for the support of the state, directed the legislatures to come thereafter to levy a *uniform rate* of assessment and taxation under such regulations as would secure a *just* valuation for taxation of *all property.* (Sec. 1, Art. XII.) And then, with prophetic vision, and in the exercise of a wise precaution against inequality of taxation, in language of plainest import, they defined the word ''property'' to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership. This important work they did not leave to other hands. And then, to make ''assurance double sure'' that property once fairly and legally assessed should be immune from again being taxed, they used these plain and unmistakable words: ''This shall not be construed so as to authorize the taxation of the stocks of any company or corporation when the property of such company or corporation represented by such stocks

is within the state and has been taxed." Mark the words, "and has been taxed"!

On the record before us, then, the ultimate question to be resolved is whether the method prescribed by the legislature for ascertaining the value of the shares of stock for taxation purposes is not in conflict with the provisions of section 17 of Article XII above which prescribe a different method; and whether such requirement does not also do violence to the provisions of section 5219 of the federal statutes (U. S. Rev. Stats. [U. S. Comp. Stats., sec. 9784]), by which a state is limited and circumscribed in the taxation of national banks to the extent that it shall not be "at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." (*First Nat. Bank of San Francisco* v. *San Francisco*, 129 Cal. 96, 61 Pac. 778.)

In our opinion, the language of Article XII above is unmistakable. The method therein specified for ascertaining the value of the shares of stock is by deducting from the cash value of the shares the amount invested in real estate within the state which has been taxed. (*First Nat. Bank of Albia* v. *City Council*, 86 Iowa, 28, 52 N. W. 334.) This mode the court below recognized and applied.

It is settled law that a state can impose such a tax only [2] upon a national bank as is authorized by the federal law. Such banks derive their authority to do business in the state from the federal government, and by virtue of federal laws, which are supreme. A state can tax the real estate of a national bank the same as other real estate is taxed, because authority to do so is expressly given by the Act of Congress above referred to. Beyond that it cannot go. That is the measure of its authority. "By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank. Any state tax therefore which is in excess of and not in conformity to these requirements is void." (*Owensboro Nat. Bank* v. *Owensboro*, 173 U. S. 664, 43 L. Ed.

850, 19 Sup. Ct. Rep. 537.   See, also, *Third Nat. Bank* v. *Stone,* 174 U. S. 432, 43 L. Ed. 1035, 19 Sup. Ct. Rep. 759; *Rosenblatt* v. *Johnson,* 104 U. S. 462, 26 L. Ed. 832; *First Nat. Bank* v. *San Francisco,* 129 Cal. 96, 61 Pac. 778.)

The statute in question, then, in so far as it conflicts with [3] the views herein expressed, must be declared a nullity, because its requirements are repugnant to both the letter and the spirit of the constitutional declarations above referred to. From this there is no escape. The result obtained by the assessor in following its specific requirements is itself conclusive against the legality of the assessment and the life of the statute. The provisions of the Constitution are mandatory, and in this instance required that the total amount invested in real estate within the state be deducted from the total of the capital stock, surplus and undivided profits. But notwithstanding this fact, the assessor, acting pursuant to the statute, increased the assessed value of the shares of stock from $40,902.92 to $155,431.90. To our minds, the infirmity of a statute could not be more clearly demonstrated nor could its intent be more palpably at variance with the spirit of the Constitution. Thus the statute is made to work out its own destruction and it cannot stand against constitutional safeguards such as these. The people have a right to the Constitution of their adoption and to have all its provisions enforced; and it is the duty of the courts, imperative and unshunnable, to give to its mandates vitality and force.

The judgment is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.