OF THE

## STATE OF IOWA

AT

## DES MOINES, MAY TERM, 1907

AND IN THE SIXTY-FIRST YEAR OF THE STATE

---

F. J. BLAKE, Appellant, v. J. N. MILLER, Appellee.

**Contracts:** EXPLANATION: PAROL EVIDENCE. Where a written contract is silent as to which of the parties is to perform a condition stated therein, such fact may be shown by parol.

**Instructions.** Instructions inconsistent with each other are erroneous.

**Estoppel:** EVIDENCE. An estoppel arises where one party is led to act differently than he would have done had it not been for the representations of the other, or his failure to disclose facts relied upon by him when it became his duty to speak. In the instant case evidence is held sufficient to take the issue of estoppel to the jury.

**Same.** Where a right of recovery is established in favor of the assignee of a contract as against the other party thereto, based on an estoppel, any issue as to the bad faith of the assignor in procuring the contract is immaterial.

**Instructions:** PREJUDICE. Where there are issues on which the evidence is conflicting, the appellate court cannot say that error in the instructions should be disregarded, because in no event could there have been a verdict for the complaining party.

**Estoppel.** Where a party fails to assert his version of agreement concerning which a written memorandum thereof is silent, when it becomes his duty to speak, but stands upon the writing, he cannot, after litigation has begun, change his ground and assert a different state of facts from that which, by his silence, he has lead the other party to rely upon.

*Appeal from Webster District Court.*— HON. J. R. WHITAKER, Judge.

FRIDAY, JUNE 7, 1907.

PLAINTIFF, as assignee of one Purvis, seeks to recover a commission claimed to have been earned by him (Purvis) in negotiating an exchange of certain Minnesota lands for a property known as the Ft. Dodge Clay Works. Defendant claimed, among other things, that Purvis never complied with the terms of their contract on his part; that Purvis without his (defendant's) knowledge was acting as an agent for the clay works and received a commission therefrom as such agent and some other matter not necessary to be stated. Plaintiff pleaded an estoppel due to defendant's admissions before he (plaintiff) purchased Purvis' claim, that he was indebted to him (Purvis) for a commission growing out of the exchange. Upon these issues, and some others not now necessary to be stated, the case was tried to a jury, resulting in a verdict for defendant, and plaintiff appeals.— *Reversed.*

*P. F. Nugent,* for appellant.

*Kelleher & O'Conner,* for appellee.

DEEMER, J.— The following memorandum of agreement was made and entered into between defendant and Robert H. Purvis on or about the day it bears date:

This memorandum of agreement entered into the 16th day of September, 1904, by and between Robert H. Purvis of Crookston, Minnesota, party of the first part, and John N. Miller, of St. James, Minnesota, of the second part, witnesseth: Whereas, party of the first part has acted as agent for party of the second part in the negotiation of a certain trade of Minnesota land, consisting of 3,160 acres, for the property known as the Ft. Dodge Clay Works, being property situated across the river, near the Illinois Central Railroad Bridge, in Ft. Dodge, Iowa; And, whereas, the arrangements are not as yet fully completed, owing to the fact that money must be borrowed on the Ft. Dodge Clay Works to the extent of $15,000.00: It is therefore agreed by and between the parties hereto that the said first party is to take as his commission a second mortgage upon the land in Minnesota traded to the Ft. Dodge Clay Works, in the sume of $3,950.00, being at the rate of $1.25 per acre. Said mortgage is not to be delivered to said party until a loan is secured on the Ft. Dodge Clay Works to extent of $15,000. When said mortgage is made and executed, party of the second part agrees to turn over the mortgage herein provided, to the said party of the first part in full of his commission as agent. Signed this 16th day of September, 1904. Robert H. Purvis, Party of the First Part. J. N. Miller, Party of the Second Part.

It is claimed that this was entered into after negotiations for the trade had been entered upon, and that the note and mortgage of $3,950 was to be executed to defendant's father and brother, and by him assigned to Purvis, and that Miller represented that he would not complete the trade unless he could make a loan of $15,000 upon the Clay Works, and that Purvis was not to receive his commission, which was represented by the $3,950 note and mortgage unless said loan was made. That the exchange was in fact consummated, and that defendant, instead of procuring a loan of $15,000 upon the Clay Works, accepted one for the sum of $5,000 is conceded. It is now asserted that the proposition requiring the procurement of the $15,000 loan was demanded and inserted in the contract through fraud, and

with intent to cheat and defraud Purvis out of his commission, which was then practically earned; that defendant, Miller, waived the provisions as to the $15,000 loan by making the $5,000 one. Plaintiff claims that for a valuable consideration he secured an assignment of Purvis' claim to commission from defendant, and that before taking the same he inquired of defendant as to whether or not he (defendant) owed plaintiff the sum of $3,950, to which defendant responded that he did; that the same was in the form of a note, which it is claimed defendant then showed plaintiff; that plaintiff informed defendant that he was about to obtain Purvis' interest in or right to the commission, and asked defendant if there was due Purvis the sum of $3,950, and whether if he (plaintiff) took an assignment of the claim it would be all right, to which defendant responded that he knew of no reason why it would not be; and that, in reliance upon these statements, plaintiff took an assignment of Purvis' claim.

He avers that he has made demand upon defendant for the $3,950 note and mortgage which was refused, and he further alleges that defendant waived his right to insist upon the $15,000 loan and is estopped from denying his liability to plaintiff. Defendant, in answer, denied plaintiff's claims, except that he admitted the employment of Purvis to negotiate a trade. He averred that without his knowledge Purvis was acting as agent for both parties to the exchange; that he had received the sum of $1,000 for his services from parties who are interested in the Clay Works. He, also, averred that Purvis was to procure the $15,000 loan upon the Clay Works, and was not to be entitled to any commission unless he secured it, and that he utterly neglected to make or secure the loan, of all of which plaintiff had notice, and that, as Purvis failed and neglected to comply with his part of the contract, neither he nor plaintiff is entitled to any commission, or to the note and mortgage for $3,950. Defendant, also, pleaded conspiracy and fraud upon the part of plaintiff

and Purvis; but, as the trial court took this issue from the jury, we shall have no occasion to consider that matter.

The statements already made present all issues tendered by defendant's answer, save that it is alleged that plaintiff knew that Purvis was acting as agent for both parties at the time he obtained the assignment of the commission contract. Plaintiff denied generally the allegations of the answer, and pleaded that upon the day the exchange of properties was made defendant secured a loan of $5,000 upon the Clay Works, thus waiving his right to insist upon a $15,000 loan and putting it out of his power to make a $15,000 loan, and that he thus waived the provision as to the $15,000 loan, and he further pleaded that defendant has had ample opportunity to secure a $15,000 loan, and that he has failed and neglected to do so, and is thus estopped from relying upon his failure to procure such a loan. The verdict upon these issues, as has been stated, was for defendant. Plaintiff's principal reliance for a reversal is upon errors in the instructions, although some complaints are made of rulings on evidence.

Defendant was permitted, over plaintiff's objections, to show that it was Purvis who was to procure and secure the $15,000 loan upon the Clay Works. As the memorandum is silent upon this point, or, to say the most in its favor, ambiguous, we think that such testimony was admissible. *Sutton v. Griebel,* 118 Iowa, 78; *Mt. Vernon Co. v. Sheeley,* 114 Iowa, 313; *Ingram v. Dailey,* 123 Iowa, 188.

1. CONTRACTS: explanation: parol evidence.

II. In order to consider the propositions made in the instructions, we shall be compelled to set some of them out *in extenso.* The following were given at plaintiff's request:

2. INSTRUCTIONS.

If you find from the evidence that Blake told Miller that Purvis said that he (Purvis) was not to obtain the $15,000 loan, and that he (Blake) was about to make a settlement with Purvis, and inquired of Miller whether he

(Miller) owed Purvis $3,950 as commission, and whether it would be all right if he (Blake) took an assignment of said commission from Purvis, and you further find that Miller told Blake that he did owe Purvis $3,950 for commission and the same was represented by a note of $3,950 secured by a mortgage, and that he (Miller) knew of no reason why it would not be all right for Blake to take the transfer of said commission, then, in such case, you are instructed that Blake had the right to rely on the statement of Miller; and if you find as a matter of fact that Blake did rely on such statements, and because of such reliance took an assignment of the said commission, and paid $1,000 therefor, then you will find that Blake is entitled to recover in this action, regardless of whether Purvis agreed, or did not agree, to get, for Miller, a loan of $15,000, unless defendant has established one or more of his other defenses to which your attention is called in other portions of these instructions.

If Blake told Miller that Purvis said that he (Purvis) was not to make the loan, and Miller refused to say whether Purvis was or was not to make the loan, but merely referred Blake to the contract, then Blake had the right to assume that it was Miller, and not Purvis, who was to make the loan, then you are instructed that, in such case, Miller would only be allowed a reasonable time in which to make the loan; and you are further instructed that, if Miller failed to make such loan within a reasonable time, and suit was not commenced until after the expiration of such reasonable time, then, in such case, the fact that no such loan has been in fact made is no defense in this case.

In the absence of an oral agreement that Purvis should procure a loan of $15,000, you are instructed that the written contract means that the loan was to be made by the owner of the property; that is, by Miller himself, and not by Purvis.

The court, upon its own motion, gave the following, in addition to those above quoted:

In reference to the claim of plaintiff, you are instructed that he had a perfect right under the law to purchase of said Purvis all or any interest that said Purvis had in the commission contract with the defendant, Miller, and take an

assignment of the same in ·writing, as the evidence shows he did do; and if you find from the evidence that he paid the said Purvis $1,000 therefor, or that at the time Purvis was indebted to the plaintiff, the same would be a good consideration for said purchase, and the plaintiff would have a right to sue the defendant, Miller, for the amount under said contract that the defendant agreed to pay the said Purvis.

And if you do not find for the defendant on one or more of his defenses to this action, then the plaintiff is entitled to recover, and it would be your duty to return a verdict for the plaintiff for the amount you find under the evidence that the defendant, Miller, agreed to pay the said Purvis for his commission, as provided in the contract between the two.

You are instructed that, in this suit of the plaintiff against the defendant on said commission contract, assigned to the plaintiff, the defendant has the right to make the same defense that he could have made if the suit had been brought by the said Purvis himself.

If you find from the evidence that the said Purvis and the defendant, in addition to the contract in writing between them, made an oral contract, by which the said Purvis was to procure for the defendant a loan of $15,000 upon the Ft. Dodge property, and the procurement of said loan was not afterward waived by the defendant, then, the loan not having been procured, the plaintiff is not entitled to recover in this case, and your verdict should be for the defendant.

If you find from the evidence that the defendant after making said written commission contract with said Purvis and the additional oral contract in relation thereto as above mentioned, if he did, made the written contract for the exchange of Minnesota land for the Ft. Dodge property, by which said defendant was only furnished a loan of $5,000, secured by a mortgage on the Ft. Dodge property, and thereby abandoned the plan of procuring a $15,000 mortgage, but completed said arrangements for the exchange of said properties by obtaining a mortgage for $5,000 only, then the defendant would have waived any right to afterwards insist that said Purvis furnish him a loan of $15,000 on said property, and would have no right now to complain that such loan was not furnished, and would not be released from his liability to the plaintiff for said commission on the ground that Purvis had not furnished said loan of $15,000.

But if you find from the evidence that said loan of

$5,000 was only accepted by the defendant as a temporary arrangement, and until said Purvis should procure said loan of $15,000, if he did so agree, then the defendant would not have waived his right to have the agreement between Purvis and him complied with in reference to said $15,000 loan, if you find they had one, and the plaintiff would not be entitled to recover herein.

If you find from the evidence in this case that the said Purvis represented to the defendant that, in case he (the defendant) exchanged his Minnesota land for the Ft. Dodge Clay Works, he (Purvis) could and would procure for said defendant a loan or mortgage on said Ft. Dodge property, in the sum of $15,000, and that the defendant, relying on said representations, made said exchange, and in making said exchange and receiving the loan of $5,000 he did not abandon his intention of obtaining a loan for $15,000, and did not thereby waive that promise made him of the larger loan, then the plaintiff would not be entitled to recover, and your verdict should be for the defendant.

If you find from the evidence in this case that the said Purvis received from the owner or owners of the Ft. Dodge Clay Works the sum of $1,000 for his (Purvis') services in obtaining the exchange of their property for the Minnesota land of the defendant, and such payment was made with the knowledge and consent of the plaintiff, then the plaintiff cannot recover the commission he is now suing the defendant for.

If, however, you find from the evidence that the $1,000 was paid Purvis by the owner or owners of the Ft. Dodge Clay Works on the order of the plaintiff, and that said order was given said Purvis by the plaintiff in payment, or part payment, for the assignment of the written commission contract from Purvis, and not for any services performed by said Purvis for the Ft. Dodge Clay Works in aiding them in procuring an exchange of their property, then the receipt of the $1,000 by Purvis would not of itself defeat the right of the plaintiff to recover in this case.

A cursory reading of these instructions shows that they are in conflict and inconsistent, and if there be evidence to support plaintiff's claim of estoppel by reason of the defendant's conduct and declarations, which the trial court

assumed that there was, the instructions are essentially and fundamentally wrong, in so far as they refer to the failure of Purvis to procure the $15,000 loan.

If, because of representations to plaintiff, defendant is estopped from insisting upon Purvis' procurement of the $15,000 loan, then, of course, the fact that he did not do so, as agreed, cannot be relied upon as a defense to plaintiff's suit. This is too elementary to justify the citation of authorities for its support.

3. ESTOPPEL: evidence.

Appellee relies, however, upon two propositions to meet these suggestions: First, that under the undisputed evidence a verdict for defendant was demanded because of bad faith and double dealing upon the part of Purvis. Of course, if there be an estoppel, this proposition is out of the case; but assuming arguendo that there is no testimony as to an estoppel, and looking squarely at the proposition as to bad faith, we find that the jury may have found that there was no bad faith, that Purvis was not getting a commission from both parties, and that whatever he received from Blake was in consideration of an assignment to him (Blake) of a part, if not all, of his (Purvis') claim for commission. At most, it seems that Blake represented the parties interested in the Clay Works, and that Purvis represented the defendant, Miller, and that, as between Blake and Purvis, there was some arrangement to divide commissions. Neither was representing the other in the matter, and we are not prepared to say that such an arrangement would defeat both of their claims for a commission. But, however this may be, there was enough to take the case to a jury upon the question as to whether or not there was simply an assignment to Blake of Purvis' right to compensation for his services from defendant for an agreed compensation, or an arrangement whereby Purvis was to have a commission from both parties to the exchange.

4. SAME.

Second, it is insisted that there is not sufficient testimony as to an estoppel to take the case to a jury. Even if

this be true, plaintiff had the undoubted right to have the jury correctly instructed as to the other issues in the case. The trial court gave several instructions with reference to the estoppel, one of which, to-wit, the fourteenth, undoubtedly had sufficient evidence in its support, and we are not justified in saying, in view of this fact, that, notwithstanding the errors in the instructions, defendant was in any event entitled to a verdict.

There were two issues upon which there was conflict in the testimony, and it is not within the power of an appellate court, under such circumstances, to say that plain or conceded error should be disregarded because in no event could there have been a verdict for the complaining party; but we think there was enough testimony to take the case to the jury upon the question of estoppel on the theory upon which the case was submitted in the instructions given by the trial court. We shall not set out the testimony.

5. INSTRUCTIONS: prejudice.

It is enough to say that it presents a case where it was defendant's duty to speak, that he did not speak, and that plaintiff was justified in relying upon the claims then made. There is testimony to the effect that, when Miller was asked as to whether or not Purvis was to procure the $15,000 loan, he (Miller) referred to Blake the written contract, and made no assertion or claim of any other agreement than the written memorandum. Having planted himself upon it, knowing that Blake was relying upon his statements, and was about to make an investment on the strength thereof, and that Purvis was denying that he was to procure or secure the loan, it was his duty to state all the facts upon which he relied, and, having planted himself upon the written memorandum, he could not thereafter " mend his hold." *Donly v. Porter,* 119 Iowa, 542; *De Sonora v. Bankers Co.,* 124 Iowa, 576; *Bower v. Stewart,* 30 Iowa, 579.

6. ESTOPPEL.

All this, according to some of the testimony, was coupled

with an admission by defendant that it would be all right for plaintiff to buy Purvis' claim. We do not mean to say that a jury should have found there was an estoppel as a matter of law in defendant's conduct. The point here is that there was enough to take the case to a jury upon the proposition involved.

Upon the whole case, there was not such a showing as would have justified a directed verdict for defendant, and, as the instructions are inharmonious, so much so as to mislead and misdirect a jury, the case must be reversed on account thereof. The instructions disclose the only issues submitted, and these we need not further elaborate.

For the errors pointed out, the judgment must be, and it is, *reversed*.