ADAM GOLWITZER et al., Appellees, v. FRANK HUMMEL, Appellant.

EVIDENCE: Parol as Affecting Writings—Contracts Partly Written,
1 · Partly Oral. Parol evidence is admissible to show that a building contract was partly in writing and partly oral.

CONTRACTS: Breach—Right to Complete Contract. Upon a substan-
2 tial breach of a building contract and the refusal of the contractor to proceed with the work, the owner of the property may himself take over the completion of the contract according to its terms, and charge the cost thereof against the contractor.

Headnote 1:, 22 C. J. p. 1283. Headnote 2: 9 C. J. p. 812.

*Appeal from Marshall District Court.*—JAMES W. WILLETT, Judge.

DECEMBER 15, 1925.

REHEARING DENIED MARCH 19, 1926.

ACTION to foreclose a mechanic's lien. The district court granted the relief prayed, and defendant appeals.—*Reversed.*

*E. N. Farber,* for appellant.

*C. H. Van Law,* for appellees.

ALBERT, J.—I. In April, 1920, the appellant contemplated building a dwelling house in the city of Marshalltown. On the 10th of that month, a written contract was signed by the parties, which recites, in substance, that the basement of the house was to be 20x36; the depth of the basement and the height of the ceiling were specified; the contractor was to furnish all material and labor except the furnace and installation of the same, and all fixtures for plumbing, which party of the second part agreed to furnish. The house was to be given two coats of paint, outside and inside, and to be shingled with red fireproof rubberoid shingles on roof, and Star A Star red cedar on all outside walls, with building paper under the shingles. The dining room and living room were to have ⅜″ oak clear flooring; all other rooms were to have good grade yellow pine flooring, and interior finished in clear yellow pine; the bathroom was to be white enameled.

Parties of the first part were to receive $4,000 for this building when completed, together with the old house and barn. Payments were to be made as follows: $1,000 when the basement was completed and lumber on the ground sufficient to complete the rough construction, $1,000 when rough construction was completed, $1,000 when plastering was finished, and $1,000 when building was finished. Nineteen light openings were directed; basement was to be cemented, with drain, sill cock on rear of basement; all work and material to be first-class, and built according to plans attached and made a part of the contract.

The plans referred to in the foregoing contract consisted of a penciled sketch on an attached sheet of paper, outlining the proposed house in a general way, but containing comparatively no detail. There were no specifications whatever made for this job. It is the claim of appellant that all of the details which are ordinarily found in a set of specifications were talked over before the aforesaid contract was signed; and such talk and agreement relative to detail in the construction of this

building were offered in evidence and objected to by the appellees on the ground that such admission would violate the parol-evidence rule.

It is the claim of the appellant that the contract for the construction of the building was partly in writing and partly oral. We do not set out the testimony on this point, but suffice it to say that the record abundantly shows that this contention is correct. Many of the things contended for by the appellant are admitted by appellees. They testify that they could not have constructed this building under the writing alone, without consultation with the appellant as to detail. We are committed in this state to the rule that a contract may be partially in writing and partially in parol. *Peterson v. Chicago, R. I. & P. R. Co.,* 80 Iowa 92; *Murdy v. Skyles,* 101 Iowa 549; *Blake v. Miller,* 135 Iowa 1; *Chicago Tel. S. Co. v. Marne & Elkhorn Tel. Co.,* 134 Iowa 252; *Oakland Cem. Assn. v. Lakins,* 126 Iowa 121; *Keen v. Beckman Bros. & Co.,* 66 Iowa 672. The parol evidence offered by the appellant on this line was admissible, under the above cited cases.

1. EVIDENCE: parol as affecting writings: contracts partly written, partly oral.

II. The evidence shows that, long prior to the letting of this contract, the appellant and his wife, having determined upon the construction of this dwelling, had decided between themselves the many details incident to such construction. When the matter of making the contract was before the contractor and the appellant, these details were all talked over. They are too numerous to set out in full; but when the contractor had prepared the typewritten contract heretofore referred to, it was suggested by the appellant that these details be put into the written contract; but the contractor told him that he understood these details fully, and that it was unnecessary to put them into the contract, and that all the details specified and required by the appellant were understood and would be carried out without having them set out in the written contract.

2. CONTRACTS: breach: right to complete contract.

The appellees proceeded with the construction of the building, and when the basement was completed and the material on the ground, they received their first payment, of $1,000. When the house was further completed, their second payment was

received, and when the house was plastered, they demanded the third payment, as provided in the contract. This was refused them because they had not completed the construction to the point where they were entitled to said third payment. Notice was served on them to proceed with the work, and they refused to do so. After some ten days' time, the appellant employed others to complete the building. Appellees thereupon filed a mechanic's lien, and in this action seek to foreclose the same.

Appellees complain very bitterly, and assign, as one of their reasons for refusal to proceed with the contract, that the appellant's wife continuously objected to the work that they were doing; that they could not get along with her; and that they quit the work on that account. Troubles had arisen originally as to the size of the house, as to whether or not the figures shown on the plans were inside measurements or outside measurements; but this seems to have been adjusted satisfactorily before the contract was signed.

Appellant's objections to paying the third payment grew out of many and varied objections to the work that had been done. The evidence satisfactorily shows that the cement mixture for the foundation and basement was not a good mixture, in that, instead of being a mixture of cement and coarse sand, at least part of the sand used was quicksand. The basement floor was to slope to a given point, for drainage purposes; but a large part of the floor did not drain to this point. The front porch roof was defective, and leaked; the porch pillars were too small, and were not plumb; and the back porch floor sloped toward the house. The pergola was not anchored to a cement foundation, and was not as large as contemplated. The roof of the house leaked and sagged, and appellees tried to remedy this by using a jackscrew to raise it; but it still seems to have a sag perceptible from the outside of the house. The sides of the house were to be covered with shingles, underlaid with paper. In some instances, there was no paper put under the shingles, and the shingles laid on the house were irregular in some places, and the laying of the same varied from four to seven inches to the weather. These shingles were not painted as specified. The windows in the attic were immovable, and the attic floor was not as large as contemplated. The furnace was

not located in the place indicated in the plans, but was so arranged that the foot of the cellar stairs was against the furnace. An iceless refrigerator was to be put in, the bottom of which was to be four feet below the bottom of the basement floor, and it was to pass into the kitchen and come up beside the cupboard. This refrigerator was never put in, although the pit was prepared for it; and, if it had been constructed from that pit, it would have come up in the middle of the kitchen, instead of at the side. The coal bin was not partitioned off from the rest of the basement. The chimney constructed was too small, and had to be rebuilt. The floor was uneven and not level, and had to be shimmed in order to lay the oak flooring thereon, and when completed, the surface was still uneven. The bathtub was provided for on the wrong side of the bathroom, and so was the cupboard or medicine case. Part of the plumbing that had been put in had to be taken out and replaced. The window cords for some of the windows were too short, and the front door was too narrow. There was no water spouting provided for the house, and the cistern pump was not connected as agreed. The fireplace was much smaller than specified, and no china closets or cupboards were provided. The walls and plastering were so uneven that in some places the plastering was two inches thick. The openings made for the doors were not square. These are only some of the defects in the work which the evidence shows was performed by appellees. With the doing of this kind of work it is little wonder that the wife of appellant was bitterly complaining.

Before the appellees refused to proceed with the work, the appellant employed an architect, which he should have done in the first instance, who went over the work and suggested numerous things to be done by the appellees before they were entitled to their third payment. Some of these things were done, and others were not. The evidence quite abundantly shows that most, if not all, of the objections to defective work made by the appellant were justified, and the evidence does not show anything which would justify the contractor in refusing to proceed with the work. When he refused to proceed with the work, appellant had the right to complete the work in accordance with the agreement, and the evidence shows that he did so.

He had this right even though the contract made no such provision. *Ludowici Caladon Co. v. Independent Sch. Dist.*, 169 Iowa 669; *Schmidt Bros. Const. Co. v. Raymond Y. M. C. A.*, 180 Iowa 1306. Under this authority, he also had the right to charge appellees the cost of completion of the building in accordance with the terms of the agreement. Appellees claim that they were entitled to an allowance of $249.35 for extra work and material. We have gone over the itemized account, and in our opinion they were only entitled to $184.35. The evidence shows that appellant actually expended $1,515.30 to complete the building. He claims that it cost him $1,615.30, but in that amount is included the item of $100 for architect's fees, to which we do not think he is entitled.

It is apparent that many of the defects in the construction of this house could not be remedied, and that they depreciated the value of the building. The only evidence introduced in the case on the question of damages shows that the house is worth somewhere between $1,000 and $1,500 less than it would have been, had it been constructed in accordance with the agreement. We deem this estimate rather high, and are of the opinion that the damage would not exceed the balance due on the contract, as above estimated, or $669.05.

Appellees seek to avail themselves of the general rule in force in this state known as the doctrine of "substantial compliance with a contract," as announced in *Prior v. Schmeiser*, 100 Iowa 299, and *Gorton v. Moeller Bros.*, 151 Iowa 729; but we do not deem this case one for the application of that doctrine. The variance from the original contract is such that it rather tends to show a willful purpose to make as cheap a job as possible out of this. More than this, in the written contract there was a provision that all work and material were to be first-class. Suffice it to say that the appellees did not live up to this provision. Taking it all in all, we reach the conclusion that the appellees were not entitled to recover herein, and the district court should have so held.—*Reversed.*

FAVILLE, C. J., and EVANS and MORLING, JJ., concur.