The **FEDERAL LAND BANK OF OMAHA**, a Corporation,
Plaintiff,

v.

Dale L. **EMBERTON** and Marcia Ann Emberton, Husband and Wife; Clarinda Production Credit Association, n/k/a Production Credit Association of the Midlands; Iowa State Bank, an Iowa Corporation; Clifton Cattle Company, Inc., a Texas Corporation; White-

hall Gas & Oil Company, Inc., d/b/a Hamburg Oil Co.; Wayne Bailey, d/b/a Bailey Oil Co.; and United States of America, Treasury Department, Internal Revenue Service, an Agency of the United States Government, Defendants.

CLARINDA PRODUCTION CREDIT ASSOCIATION, n/k/a Production Credit Association of the Midlands, Cross–Claimant/Appellee,

v.

Dale L. EMBERTON and Marcia Ann Emberton, Husband and Wife; Valley National Bank, an Iowa Corporation; Iowa State Bank, an Iowa Corporation, Defendants to Cross–Claim,

and

Clifton Cattle Company, Inc., a Texas Corporation, Defendant to Cross–Claim/Appellant,

and

Whitehall Gas & Oil Company, Inc., d/b/a Hamburg Oil Co.; Wayne Bailey, d/b/a Bailey Oil; and United States of America, Treasury Department, Internal Revenue Service, an Agency of the United States Government, Defendants to Cross–Claim.

CLARINDA PRODUCTION CREDIT ASSOCIATION, n/k/a Production Credit Association of the Midlands, Cross–Petitioner,

v.

Arnold EMBERTON and Terri Emberton, Defendants to Cross–Petition.

IOWA STATE BANK, an Iowa Corporation, Cross–Claimant,

v.

Dale L. EMBERTON and Marcia Ann Emberton, Husband and Wife; Clarinda Production Credit Association, n/k/a Production Credit Association of the Midlands, and Clifton Cattle Company, Inc., a Texas Corporation, Defendants to Cross–Claim.

IOWA STATE BANK, an Iowa Corporation, Cross–Petitioner,

v.

Arnold EMBERTON and Terri Emberton, Defendants to Cross–Petition.

No. 89–1175.

Court of Appeals of Iowa.

July 26, 1990.

Michael G. Helms, Omaha, Nebraska, and Donald G. Furlow of Schmid, Money & Frederick, P.C., Omaha, Neb., for appellant.

W. Curtis Hewett and Steven H. Krohn of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Judge.

Dale Emberton is a farmer, engaged in a livestock operation, and a long time borrower from the Production Credit Association (PCA). By 1983, Emberton was unable to keep his loans with the PCA current.

In August or September 1983, Emberton contacted the PCA about borrowing additional funds in order to purchase cattle and hopefully generate some profit on their later sale in order to reduce his indebtedness with the PCA. Eventually, an agreement was reached.

On October 27, 1983, several documents were signed concerning Emberton's loan with the PCA. The Embertons signed a promissory note for $135,000 borrowed from the PCA and secured by several mortgages. The Embertons also signed a security agreement pledging approximately 370 cattle as collateral. The agreement indicated that the Embertons would purchase the cattle from Clifton Cattle (Clifton) and then would later resell the cattle to Clifton. A livestock contract between Clifton and Emberton was signed in which Clifton agreed to purchase approximately 370 steers from Emberton by May 1, 1984. Finally, an assignment of the livestock contract was executed by Clifton and Emberton. This assignment provided that all of Emberton's proceeds from the sale of cattle to Clifton would be assigned to the PCA.

In January 1984, the Federal Land Bank brought a petition to foreclose against the Embertons. The PCA and Clifton, as junior lienholders, were listed as defendants. In April 1984, the PCA filed a cross-claim and cross-petition against various parties, including the Embertons and Clifton. By May 1984, Emberton had failed to sell any cattle to Clifton and had filed for bankruptcy.

Following the trial on theories of breach of contract and fraudulent misrepresentation, the jury returned a verdict finding a breach of contract and awarding the PCA $69,000 in damages. Judgment was entered and Clifton has appealed.

On appeal, Clifton claims the evidence is insufficient to support the verdict and judgment of the trial court. We view the evidence in the light most favorable to the jury verdict. *Wiley v. United Fire & Casualty Company*, 220 N.W.2d 635, 635 (Iowa 1974). We are bound by the verdict if it is supported by substantial evidence. *Id.*

At trial, the PCA claimed Clifton made an agreement with the PCA to furnish cattle to Emberton in return for which the PCA would extend a loan to Emberton for the purpose of purchasing the cattle from Clifton. The PCA asserted Clifton orally agreed to sell cattle to Emberton in the fall of 1983 and to repurchase such cattle by May of 1984. The PCA made the $135,000 loan to Emberton and he paid the loan proceeds to Clifton for the purchase of cattle. However, the PCA claimed Clifton failed to deliver the cattle to Emberton. As a result, Emberton could not sell any livestock to Clifton in May 1984 and was, therefore, unable to generate proceeds for the purpose of repayment of his loan obtained from the PCA.

Substantial evidence in the record establishes the existence of an agreement between the PCA and Clifton. The testimony of PCA president Tom McAndrews indi-

cates Emberton approached the PCA with a proposal to borrow money so he could buy cattle from Clifton and sell them the following spring. McAndrews testified he met with Emberton and Gordon Reisinger, a representative of Clifton, who encouraged the PCA to back Emberton's proposal.

McAndrews testified Emberton proposed to purchase 370 "new" cattle from Clifton and would sell them back to Clifton the following spring. McAndrews called Dale Hutcheson, the president of Clifton, to discuss the proposed deal and whether Clifton would be Emberton's source for the cattle purchase.

Documentary evidence at trial reveals Emberton signed a promissory note to the PCA for $135,000 on October 27, 1983. On that same date the PCA and Emberton executed a security agreement granting the PCA a security interest in approximately 370 cattle. Language in the security agreement indicates the cattle were to be purchased from Clifton, and pursuant to an agreement dated October 27, 1983, Clifton was to later buy back said cattle.

A third document captioned "Livestock Contract" was dated October 27, 1983. Pursuant to this agreement, Clifton agreed to purchase 370 steers from Emberton by May 1, 1984. Clifton made a $22,000 down payment on the livestock contract. A final document, executed on October 27, 1983, purports to be an assignment of Emberton's livestock proceeds. Pursuant to the agreement, Emberton agreed to assign to the PCA the proceeds from his livestock contract with Clifton.

The evidence at trial reveals the PCA made $135,000 available to Emberton. Clifton's president testified by deposition that Clifton advanced Emberton $44,000 to enable him to "pay down" his PCA indebtedness and obtain the $135,000 loan. $134,999.98 of the PCA loan was conveyed by Emberton to Clifton by three sight drafts. Each draft indicated the purpose of the transactions was the acquisition of steers.

Clifton's corporate secretary, Ms. Orbeck, testified by deposition and stated the $134,999.98 was applied by Clifton to the separate accounts of Indian Creek, Triple R. Farms, and Donald Wolff. The deposition testimony of Clifton's president reveals he knew the purpose of the PCA loan to Emberton was for the purchase of cattle. Hutcheson admitted Clifton received the proceeds of the loan but that the money was not applied to the purchase of "new" cattle by Emberton, but was applied to old debts Emberton owed to Clifton. Hutcheson claims Emberton acted as a broker to sell Clifton's cattle to Indian Creek, Triple R Farms, and Donald Wolff. When deals with those parties fell through, Emberton allegedly agreed to buy the cattle Clifton had planned to sell to those three entities.

Clifton claims it had no contractual agreement with PCA by which it agreed to apply Emberton's loan proceeds to the purchase of new cattle. Alternatively, Clifton argues there is no evidence it failed to deliver the cattle to Emberton.

■ McAndrews testified its agreement with Clifton was both written and verbal in nature. A contract may be partially written and partially oral. *Cargill, Inc. v. Fickbohn*, 252 N.W.2d 739, 741 (Iowa 1977). The parol evidence rule applies to written contracts. *See Folkers v. Southwest Leasing*, 431 N.W.2d 177, 181 (Iowa App.1988). The oral nature of the parties' agreement makes Clifton's arguments regarding the parol evidence rule inapplicable in this case.

■ The circumstances and negotiations surrounding the formation of this agreement and the documentation executed by the various parties support the conclusion that the PCA and Clifton made an agreement regarding the sale of cattle to Emberton. Likewise, sufficient evidence existed to establish Clifton failed to deliver the cattle to Emberton in accordance with the agreement.

Clifton claims Emberton was a broker between it and three entities—Indian Creek, Triple R. Farms and Donald Wolff. When sales between these three entities and Clifton fell through, Clifton claims Emberton agreed to purchase the cattle and this fulfilled its alleged agreement to sell cattle to Emberton. The evidence at trial

was controverted. Clifton's books and records did not reflect any sales of cattle to Emberton in return for the $134,999.98. The jury had a first-hand opportunity to view the credibility of the various witnesses and to assess the veracity of each party's version of events. Sufficient evidence existed to support the finding Clifton failed to sell Emberton cattle in accordance with its contractual obligation to do so.

Clifton claims the record lacks substantial evidence to establish the PCA was damaged as a result of Clifton's failure to sell and deliver cattle to Emberton in exchange for the proceeds of the PCA loan. The record reveals PCA loaned Emberton $135,000 pursuant to its contractual arrangements with Emberton and Clifton. The failure to deliver the cattle deprived the PCA of collateral by which it could secure repayment of the loan. The failure to deliver the cattle also denied the PCA the right to recover the proceeds of the May livestock repurchase agreement which had been assigned to it. There was evidence that PCA recovered no more than $66,000 of the loaned amount; the record supports the PCA's recovery of $69,000 in damages.

AFFIRMED.