# IN THE COURT OF APPEALS OF IOWA

No. 22-1031
Filed April 12, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KENNETH ALBERT CREWS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Wyatt Peterson,

Judge.

A defendant appeals his convictions for two counts of lascivious acts with a

child. **AFFIRMED.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Kenneth Crews appeals his convictions for two counts of lascivious acts with a child, in violation of Iowa Code section 709.8(1) (2021). He alleges there was insufficient evidence to support the guilty verdicts and the district court abused its discretion in selecting a jury instruction on implicit bias. We affirm because substantial evidence supports the verdicts and the district court did not abuse its discretion.

## I.    *Background Facts and Proceedings.*

In 2014, Natasha and Daniel moved their family into a trailer home located on Crews's property. At that time, the family included four children: A.B., C.B., N.M., and S.M. (in order of eldest to youngest). A.B. and C.B. were Natasha's children from a prior relationship. Natasha and Daniel had C.M. a couple years later. When they moved into the residence, C.B. was approximately eight or nine years old, and N.M. was about four or five years old. The children's maternal grandmother also lived with them.

A.B., C.B., and N.M. spent a significant amount of time at Crews's home. Crews lived in a trailer about 150 feet away from Natasha and Daniel's family. Crews's girlfriend Lynne lived with him, but she was often away from the home. The children's parents were frequently gone as well, and the grandmother had health troubles and was hospitalized multiple times. The Iowa Department of Health and Human Services removed the children from their parents' care on several occasions. Crews testified that the department never officially placed the children in his care but that it knew and approved of him serving in a quasi-caretaking role while they lived with their parents. Crews made sure the children

did not go hungry, washed their laundry, and took them to school. He also paid them to do chores around the property and let them watch TV and use the internet.

In 2018, the court removed the children from their parents for the last time and eventually terminated their parental rights. Mariah and Charles adopted N.M. and S.M. in 2020. In 2021, N.M. told Mariah during a home bible study about changing bodies and sexual abuse that Crews had inappropriately touched her multiple times. She also alleged that C.B. was involved in some of the incidents. During a forensic interview, C.B. denied both involvement and knowledge of any inappropriate touching. At the time of the interview, C.B. was living with his maternal grandmother, who lived next to his parents. He has since been placed with a foster family. C.B. later acknowledged there had been inappropriate touching between Crews and himself, as well as between Crews and N.M. C.B. explained that he initially denied the allegations because he felt embarrassed and guilty for not protecting his sister. None of the other children were implicated in N.M. and C.B.'s allegations. A.B. and S.M. were interviewed but denied any knowledge of inappropriate behavior.

When a detective interviewed Crews, he denied any inappropriate sexual behavior but forthrightly identified several incidents involving blurred boundaries. For instance, Crews stated that N.M. would bring her father's phone with her to his home, watch pornographic videos on the phone, and ask Crews questions about the videos. He claims that he tried to shut her down about the videos but ended up answering some questions. Crews acknowledged one time when N.M. had a rash but told him that her parents and grandmother would not put anything on it for her, so he rubbed Vaseline on her thighs, groin, and buttocks. Crews recounted

that the children would go swimming in his pond, and he went skinny-dipping with them on at least one occasion. He testified that the children showered at his home after swimming in the pond and that he would see them naked, and vice versa, when assisting with the water temperature or getting in and out of the shower after one another. He also acknowledged that there were two showers in his home.

In April 2022, a jury found Crews guilty of two counts of lascivious acts with a child—one count for each child. Crews filed a timely appeal.

## II.    Review.

We review a challenge to the sufficiency of the evidence for the correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). If substantial evidence supports the jury's verdict, we will uphold it. *Id.* "Evidence raising only 'suspicion, speculation, or conjecture is not substantial.'" *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017) (citation omitted). "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). "[W]e view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).

"Additionally, we review the refusal to give a cautionary jury instruction for abuse of discretion." *State v. Williams*, 929 N.W.2d 621, 628 (Iowa 2019). Our supreme court has described the abuse-of-discretion standard as follows:

> When assessing a district court's decision for abuse of discretion, we only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable. Grounds or reasons are untenable if they are "based on an

erroneous application of the law or not supported by substantial evidence."

*Id.* (citation omitted). Even when a court abuses its discretion in giving or refusing to give a jury instruction, such error "does not warrant reversal unless it results in prejudice to the complaining party." *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) (citation omitted).

## III. Discussion.

### A. Sufficiency of the Evidence.

Crews argues that the evidence was insufficient to convict him of lascivious acts with either child. The marshalling instructions required the State to prove:

(1) On or about January 1, 2014 through December 31, 2018, the defendant, with or without N.M.'s/C.B.'s consent, performed any of the following acts with N.M./C.B.:

 (a) fondled or touched the pubes or genitals of N.M./C.B.; or

 (b) permitted or caused N.M./C.B. to fondle or touch the defendant's genitals or pubes;

(2) The defendant did so with the specific intent to arouse or satisfy the sexual desires of the defendant or N.M./C.B.

(3) The defendant was then 16 years of age or older.

(4) N.M./C.B. was then under the age of 14 years.

Crews disputes the first two elements specifically. The children's testimony was the only evidence offered by the State on these points. Crews contends their testimony was so inconsistent and self-contradictory as to render it unreliable and require corroboration. We disagree.

> A sexual abuse victim's testimony alone may be sufficient evidence for conviction. As a result, [the defendant's] argument that [the victim's] testimony is not credible enough to convince a rational fact finder of his guilt beyond a reasonable doubt is unavailing for sufficiency of the evidence purposes. Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict.

*State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021).

Crews cites the example of *State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993), where our court found the testimony of three sexual abuse victims was insufficient to support the conviction as a matter of law because "[w]hen read separately or together, the accounts of alleged abuse are inconsistent, self-contradictory, lacking in experiential detail, and, at times, border on the absurd." However, our supreme court has heavily criticized *Smith*, which "has not been followed in any sexual abuse case in Iowa since." *State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022) ("The primary flaw in *Smith* is that it is inconsistent with the standard of appellate review of jury verdicts, which requires that the evidence be viewed in the light most favorable to the verdict and which requires deference to the jury's resolution of disputed factual issues.").

In any event, the issues highlighted by Crews do not constitute fatal deficiencies. He points out that the children could not pin down exact dates or times of day when the incidents occurred, but such specificity is not required. C.B. changed his story as to whether any abuse occurred at all. N.M. claimed they never showered at Crews's house, that Crews had her and C.B. try to engage in sexual intercourse, and that she did not watch pornographic videos on her father's phone but did watch pornographic videos with Crews on his computer. On the

contrary, C.B. testified that they did shower or bathe at Crews's house, that Crews never requested he and N.M. attempt intercourse, and that N.M. raised sexual questions to Crews and Crews would shut her down about them.

Any conflicts in the children's testimony were for the jury to consider. *See Fed. Land Bank of Omaha v. Emberton*, 460 N.W.2d 488, 492 (Iowa Ct. App. 1990) ("The jury had a first-hand opportunity to view the credibility of the various witnesses and to assess the veracity of each party's version of events."). Despite the discrepancies in the children's memories on these details, a rational jury could still credit their individual accounts of inappropriate touching with Crews. *See State v. Atkins*, No. 20-0488, 2021 WL 3895198, at *3 (Iowa Ct. App. Sept. 1, 2021) ("The inconsistencies raised in this appeal are of the kind commonly found in prosecutions for child sex abuse, and they do not render the substance of the testimony impossible, as was found in *Smith*.").

Each child provided sufficient evidence that genital touching occurred with the defendant. N.M. testified that Crews rubbed Vaseline on her vagina and that he would have her rub his penis with her hands "until white stuff came out." C.B. testified that Crews would touch his penis and also have C.B. rub Crews's penis, sometimes until Crews ejaculated. Because the touching resulted in ejaculation, this testimony also proved that the contact was to satisfy Crews's sexual desires. Therefore, the children's testimony constitutes sufficient evidence upon which rational fact finders could find Crews guilty beyond a reasonable doubt.

Crews points to his competing explanations for the children's testimony. For example, he described applying Vaseline to N.M.'s groin area for a rash, seeing the children naked in the shower only to assist with the tricky water knobs, skinny

dipping with the children only to avoid leaving them unattended, and uncomfortably navigating sexual questions from a curious child exposed to sex and pornography at home. Crews also emphasizes that Daniel and Lynne testified that he had a good relationship with the children, that he cared for them, and that they never witnessed the alleged abuse or signs thereof.

> Regardless, all of these disputed fact issues were for the jury to resolve, and they did resolve them, adverse to [the defendant]. Appellate review of the jury's verdict is not the trial redux. In considering a challenge to the sufficiency of the evidence, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury."

*Mathis*, 971 N.W.2d at 519 (alterations in original) (citation omitted). Reviewing the record in the light most favorable to the verdict, we find substantial evidence supporting Crews's convictions on both counts.

*B. Jury Instructions.*

The jury instructions prepared by the district court contained two instructions pertaining to implicit bias: numbers 5 and 15. Jury instruction 5 read in part:

> As you consider the evidence, do not be influenced by any personal sympathy, bias, prejudices or emotions. It is common to have hidden or implicit thoughts that help us form our opinions. You are making very important decisions in this case. You must evaluate the evidence carefully. You must avoid decision based on things such as generalizations, gut feelings, prejudices, fears, sympathies, stereotypes, or inward or outward biases. The law demands that you return a just verdict, based solely on the evidence, your reason and common sense, and these instructions. As jurors, your sole duty is to find the truth and do justice.

Instruction 15 read as follows:

> Reach your verdict without discrimination. In reaching your verdict, you must not consider the defendant's race, color, religious beliefs, national origin, or gender. You are not to return a verdict for or against the defendant unless you believe you would return the same

verdict without regard to his race, color, religious belief, national origin, or gender.

Crews objected to instruction 15 and requested that it be replaced with an implicit-bias instruction derived from Illinois Pattern Civil Jury Instruction 1.08. He noted the instruction has been modified slightly and utilized by several Iowa district courts in recent years, reading as follows:

> We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of and others we might not be fully aware of, which is why they are called "implicit biases" or "unconscious biases."
>
> Our biases often affect how we act, favorably or unfavorably, toward someone. Bias can affect our thoughts, how we remember, what we see and hear, whom we believe or disbelieve, and how we make important decisions.
>
> As jurors you are being asked to make very important decisions in this case. You must resist jumping to conclusions based on personal likes or dislikes. You must not let bias, prejudice, or public opinion influence your decision. You must not be biased in favor of or against any party or witness because of his or her disability, gender, race, religion, ethnicity, sexual orientation, age, national origin, or socioeconomic status, or any other reason not based solely on the evidence presented in this trial, and these instructions provided to you.
>
> Your verdict must be based solely on the evidence presented. You must carefully evaluate the evidence and resist, and help each other to resist, any urge to reach a verdict that is influenced by bias for or against any party or witness.

The State advocated for leaving the instructions as drafted because they reflected the stock instructions for Iowa and already addressed implicit bias. The State also argued that Crews's proposed instruction "may tend to confuse issues that are not necessarily presented here." The district court denied Crews's request and simply stated it would use jury instruction 15 as drafted, which was pulled from *State v. Plain*, 898 N.W.2d 801, 816 (Iowa 2017). In *Plain*, 898 N.W.2d at 816, our

supreme court expressly stated that this implicit-bias instruction correctly states the law. More recently, our supreme court approved of a very similar version of instruction 5 in *State v. Williams*, 929 N.W.2d 621, 633 (Iowa 2019). These instructions were given separately in *Plain* and *Williams*, but both were incorporated in Crews's case.

Crews ignores this precedent and argues he was prejudiced by the court's choice because "the instruction the court used did not adequately depict all of what an implicit bias is and how it would affect the jury's verdict."[1] He argues it was necessary for the court to include an accurate explanation and instruction on implicit bias. Although we agree it is an important goal of our courts to prevent unjust verdicts resulting from implicit bias, "Iowa law permits—but does not require—cautionary instructions that mitigate the danger of unfair prejudice." *Plain*, 898 N.W.2d at 816 (noting courts have broad discretion about how to address the problem of implicit bias). In sum, the court was not necessarily required to instruct the jury on implicit bias, and the implicit-bias instructions it elected accurately stated the law.

Therefore, the district court did not abuse its discretion in choosing to employ the implicit-bias instructions as drafted rather than the instruction requested by Crews. Even if Crews's proposed instruction was not covered by the

---

[1] On appeal, Crews does not identify what unfair prejudice he sought to mitigate. According to the pre-sentence investigation report, Crews is white, non-Hispanic, male, and seventy-four years of age. We have no further information regarding the statuses listed in the instruction. At trial, Crews suggested that the jury could be potentially biased against him because he was represented by a female attorney and because juries may assign undue weight to the testimony of child witnesses.

court's instructions, we would find the court's decision did not prejudice Crews. This opinion should not be read to suggest Crews's proposed instruction would have necessarily been improper. *See Williams*, 929 N.W.2d at 633.

Because Crews's challenges to the sufficiency of the evidence and the implicit-bias instruction both fail, we affirm his convictions.

**AFFIRMED.**